Mary Louise **BELL**, Petitioner-Appellee,

v.

Dorothy **ARN**, Supt., Respondent-Appellant.

No. 75–2191.

United States Court of Appeals, Sixth Circuit.

Argued April 7, 1976.

Decided June 4, 1976.

William J. Brown, Atty. Gen. of Ohio, Frederick L. Ransier, Simon B. Karas, Columbus, Ohio, for respondent-appellant.

Lawrence H. Brenner, Jones, Giha, Schell, Brenner & Co., Toledo, Ohio (court-appointed), for petitioner-appellee.

Mary Louise Bell, pro se.

Before Miller *. and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by the State of Ohio, Respondent-Appellant, from an order of the United States District Court for the Northern District of Ohio, Western Division, granting a writ of habeas corpus to Mary Louise Bell, petitioner-appellee. The appellee, until released on bond in this action, was confined in the Ohio Reformatory for Women at Marysville, Ohio, serving a life sentence upon her conviction for second degree murder in the Common Pleas Court of Lucas County, Ohio.

The basis of her conviction was a charge that the appellee and her boyfriend, Andrew Jackson, stabbed the victim, William James, and threw him out of the window of his room in the Argonne Hotel, where he resided. This is alleged to have occurred on December 29, 1972. Officer William Knapp of the Toledo Police Department, who had occasion to be at the hotel to investigate a robbery, heard the victim screaming,

"My God, help me. My God, help me. Somebody help me."

The officer located the victim and, when asked what happened, he said,

"They threw me out of the window after stabbing me."

When asked who, he said,

"Mary Bell and her boyfriend, the same ones that robbed me last night."

Mr. James was sent to Mercy Hospital where he was confined until he died January 31, 1973.

The trial judge admitted into evidence at the trial the distress statements of the victim as a part of the res gestae and a statement taken by Lt. Marr of the Toledo Police Department from the victim at his bedside in the hospital about two days before his death, as a dying declaration. This dying declaration forms the basis of the habeas corpus action and will be fully discussed later.

The conviction was affirmed on appeal to the Court of Appeals for Lucas County, Ohio. Only questions on the admissibility of evidence were presented on this appeal. One error claimed in this respect is:

"(2) The Court erred in permitting identification testimony of Lt. Ronald Marr." (Dying declaration)

On this ground of error the Court of Appeals said,

"Finding further that the circumstances of the case, the conduct of the victim, William James, and his evident danger of death, and from the opinions of medical attendants, that the victim had apprehension of impending death when he made a declaration to Officer Knapp (sic) (Marr), identifying by nods, gestures and lips, the person from the photographs who stabbed him and was, therefore, admissible as a dying declaration, even though given in response to leading interrogation." (Citations)

The appellee sought leave to appeal to the Supreme Court of Ohio. The basis of this appeal was that her *constitutional rights* were violated in that the identification questions were impermissibly suggestive, that there was no opportunity to cross examine the victim on the dying declaration and, therefore, she was not confronted with the witness against her and the failure of the prosecution to notify defense counsel of its intention to attempt to elicit the identification information.

The motion for leave to appeal to the Supreme Court of Ohio was denied by that Court.

The petition for writ of habeas corpus presents the same constitutional questions as were raised for the first time on motion for leave to appeal to the Supreme Court of Ohio. The respondent filed a motion to dismiss this petition on the ground that the issues presented did not rise to a constitutional level.

The circumstances of taking the dying declaration are as follows: Except for a short period of time before his death, Mr.

---

* Judge Miller died after arguments and did not participate in this opinion.

James was in the intensive care unit of the hospital from the time he entered the hospital until his death. His condition was considered critical during his entire confinement in the hospital. On January 28, 1973, prior to indictment, Lt. Marr was sent to the hospital to obtain a statement and photographic identification from Mr. James. It was the desire of the prosecution to secure physical identification of the name of Mary Louise Bell, given by Mr. James in his res gestae statement to the police officer.

At the time of Lt. Marr's visit he stated that Mr. James could not talk and that he was in "very bad shape" and appeared to have trouble breathing. At times he seemed to not be concentrating on what he was asked but, at other times, he would concentrate. He had a trachial tube down his nose and, as Mrs. Pollauff, nurse in the intensive care unit, testified, it was difficult to talk with a tube in place. She also testified that his condition was critical and that he was cyanotic, meaning that his condition was such that he could die at any time.

In answer to a question of who stabbed him, Lt. Marr testified that he formed the words "Mrs. Bell, Mary Bell" with his lips. The Lt. also testified that he showed him a series of photographs and that he identified the sixth one as Mary Bell by pointing to it with his finger. The conversation and questioning of Mr. James was recorded on tape and this was played at the trial. Mr. James died on January 31, 1973 as a result of secondary infection in the wounds he received by being stabbed. The petitioner and Andrew Jackson were subsequently indicted for second degree murder. At the trial Jackson was dismissed at the close of the State's case.

The District Judge wrote a Memorandum and Order in denying the Respondent's Motion to dismiss and this became the final decision in the case. At a pretrial conference, respondent indicated that it did not desire an evidentiary hearing. The District Judge then entered a final order granting the writ conditioned on the State's taking further action in sixty days. The Respon-

dent appealed. Relative to an evidentiary hearing, the burden was on the petitioner to prove her case and not on the respondent to disprove it.

The District Judge considered that the taking of the dying declaration was unfair to the petitioner. He said,

"Yet, it appears the police were waiting, as if they hoped that the deceased's condition would worsen to the point where any statement he made could be considered a dying declaration."

There is no basis for this inference and it can not stand as a predicate for the conclusion of the Court. It may as well be assumed that the prosecution hoped, by reason of Mr. James getting out of intensive care, to have a live witness rather than a dying declaration.

The court also said,

"The government, however, did not even notify defense counsel but rather waited until the possibility of death became the probability of death and then used the situation to their own best advantage by obtaining a statement which they felt would satisfy the requirements of a dying declaration."

This, too, is an unwarranted inference. The court concedes "that petitioner probably had no constitutional right to counsel at the identification procedure." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *United States v. Ash*, 413 U.S. 300, 318, 93 S.Ct. 2568, 37 L.Ed.2d 619; *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

The court also questions the statement as a legal dying declaration. This statement was accepted and admitted into evidence by the trial court as a dying declaration. It was affirmed as such by the State Court of Appeals. The District Judge is aware of the rule that State Court rulings on the admissibility of evidence may not be questioned in a federal habeas corpus proceeding unless it raises a federal constitutional question. *Chavez v. Dickson*, 280 F.2d 727, 736 (9th Cir.), *cert. denied*, 364 U.S. 934, 81 S.Ct. 379, 5 L.Ed.2d 366, *rehearing denied*, 366 U.S. 922, 81 S.Ct. 1092, 6 L.Ed.2d 244;

*Reese v. Cardwell,* 410 F.2d 1125 (6th Cir.). *Kinser v. Cooper,* 413 F.2d 730 (6th Cir.). *Schleicher v. Wyrick,* 529 F.2d 906, 911 (8th Cir.). We find no reason why the rule should not be applied under the circumstances of this case.

While we believe that the authenticity of the statement as a dying declaration is not open to question in this proceeding, it appears that the view of the District Judge as to the requirement of a dying declaration is in error. 270 Am.Jur.2d Homicide, Sec. 124, 143.

The District Judge concludes that the cumulative effect of the alleged errors in the petitioner's case was highly prejudicial and denied her constitutional right to a fair trial. We disagree. Barring the unwarranted inferences of the District Judge, we find nothing in the record to support the conclusion that the petitioner did not have a fair trial.

The judgment of the District Court is reversed and the case remanded with instructions to dismiss the petition.