Raymond WALKER, Petitioner-Appellee,
Cross-Appellant,

v.

Ted ENGLE, Respondent-Appellant,
Cross-Appellee.

Nos. 81–3117, 81–3260.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1981.

Decided March 23, 1983.

Rehearing and Rehearing En Banc
Denied June 24, 1983.

Bailey Brown, Senior Circuit Judge, concurred in result and filed opinion.

Dale T. Evans, Asst. Prosecuting Atty., Chief Appellate Div., Canton, Ohio, for respondent-appellant, cross-appellee.

Ernest T. Mansour (argued), David B. Cathcart, Mansour, Gavin, Gerlack & Manos, Gerald Messerman, Messerman & Messerman Co., Cleveland, Ohio, Stanley E. Tolliver, East Cleveland, Ohio, for petitioner-appellee, cross-appellant.

Before KEITH and JONES, Circuit Judges, and BROWN,* Senior Circuit Judge.

* The Honorable Bailey Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982 and became a Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

The State of Ohio appeals the district court's grant of a writ of habeas corpus to Raymond Walker. Walker cross-appeals from the failure of the district court to hold that a retrial on the charge of first-degree murder was precluded by an insufficiency of the evidence. We affirm the order of the district court granting the writ of habeas corpus and the remand for a new trial.

On July 22, 1972, a robbery occurred at an A & P supermarket in Canton, Ohio. Guy Mack, an off-duty detective with the Canton City Police Department, was shot and killed during the robbery.

The robbery was committed by four men, three of whom entered the store while the other remained outside. In 1973, Warren Davidson and Fred Ogletree were convicted as aiders and abettors in the robbery and homicide and sentenced to life imprisonment. Neither man, however, was believed to be the triggerman.

In late 1975, while incarcerated, Davidson and Ogletree contacted Stark County authorities and implicated Walker as the triggerman in the killing. In return for their testimony against Walker, Stark County officials recommended leniency to the Governor of Ohio.

Walker was indicted on March 12, 1976. The first trial ended with a hung jury.[1] At his second trial, Walker contended by way of alibi that he was confined in the Cuyahoga County Jail on July 22, 1972, the day of the robbery and killing. The official records of the Cuyahoga County Sheriff's Department, which were stipulated to by counsel, reflected that Walker was indeed confined in the Cuyahoga County Jail from April 14, 1972 to August 1, 1972. In response the state introduced an abundance of evidence attempting to show that the officers charged with running the Cuyahoga County Jail were so corrupt and/or inef-

1. The magistrate noted that, according to petitioner's brief, when the jury was discharged the panel stood 10 for 2 for acquittal. App. 28.

ficient that Walker could have gotten out of jail before July 22 and then returned to jail before August 1.

After his second trial, Walker was convicted of first-degree murder. His conviction was affirmed by the Ohio Fifth District Court of Appeals in June 1977. Walker appealed to the Ohio Supreme Court which, in a divided vote, affirmed his conviction. *State v. Walker,* 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). In April 1979, the United States Supreme Court denied Walker's petition for a writ of certiorari. *Walker v. Ohio,* 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979).

In November 1979, Walker filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition listed three grounds for relief: (1) that the Ohio appellate courts erred in failing to apply the standard of review enunciated by *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); (2) that under the *Jackson* standard, no rational trier of fact could have found Walker guilty of the Mack killing beyond a reasonable doubt; and (3) that numerous trial errors resulting in the admission of irrelevant and inflammatory evidence cumulatively operated to deny Walker a fair trial.

The magistrate filed a 108-page recommended report and decision in which he carefully reviewed the testimony of the forty trial witnesses and examined the conduct of the prosecutor in questioning witnesses and delivering his closing argument.[2] The magistrate ultimately agreed with Walker that the state's evidence regarding corruption and inefficiency at the Cuyahoga County Jail went so far beyond meeting the legitimate issues that the focus of the trial was no longer on Walker's guilt or innocence, but rather on the allegedly unlawful conduct of the officials running the jail. He concluded that the cumulative effect of the evidentiary errors was to deny Walker fundamental fairness. Having determined that a writ of habeas corpus should issue, the magistrate then analyzed the sufficien-

cy of the evidence and concluded that a retrial of Walker was precluded by *Jackson* because of evidentiary insufficiency.

The district court then issued an opinion which, for reasons "independently reach[ed]," concluded that Walker was denied a fair trial in violation of the due process clause of the Fourteenth Amendment. However, the district court disagreed with the magistrate's conclusion that *Jackson* precluded a retrial, holding that apart "from the prejudicial evidence, the prosecution produced sufficient other evidence which, viewed in the light most favorable to the prosecution, would permit a reasonable trier of fact to find Walker guilty beyond a reasonable doubt."[3]

These appeals followed.

## I

■ The major questions we are required to decide are (1) whether the district court was correct in concluding that the admission of certain evidence by the state operated to deny Walker due process of law; and (2) whether the evidence against Walker was so insufficient as to preclude a retrial.

We begin our discussion with the proposition that errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus. *Bell v. Arn,* 536 F.2d 123 (6th Cir.1976); *Reese v. Cardwell,* 410 F.2d 1125 (6th Cir.1969). Yet, errors of state law, including evidentiary rulings, which result in a denial of fundamental fairness will support relief in habeas corpus. *Handley v. Pitts,* 491 F.Supp. 597, 599, aff'd., 623 F.2d 23 (6th Cir.1980); *Maglaya v. Buckhoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Gemel v. Buckhoe,* 358 F.2d 338 (6th Cir.1966).

■ The magistrate, in concluding that the cumulative effect of the evidentiary errors denied Walker due process, relied on the entire record. A condensation of his lengthy and excellent analysis would not

---

**2.** App. 27–134.

**3.** App. 138.

now be fruitful, since the district court based its findings on six specific aspects of the trial. It should be noted that even these six alleged errors must be considered for their cumulative effect. Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair. *United States v. Jones,* 482 F.2d 747 (D.C. Cir.1973); *Newsom v. United States,* 311 F.2d 74 (5th Cir.1962); *United States v. Maroney,* 373 F.2d 908 (3rd Cir.1967). It will suffice for our consideration to assess the six alleged trial errors and their cumulative effect.

## II

A. Evidence of criminal conviction of Major Payne.[4]

Payne had been Warden of the Cuyahoga County Jail before and after, but not during, Walker's recorded period of confinement. The prosecution, over defense counsel's strenuous and continuing objections, was allowed to question two defense witnesses about Payne's criminal conviction (which came well after Walker's recorded period of detention) for theft of property from the jail. When a defense witness stated that "I think it was something about two guns that were missing," the prosecutor asked, "What was it, evidence?" Defense counsel once again objected on grounds of relevancy, but the trial court ruled, "No, it's very relevant in this case. Overruled." The prosecutor then continued his attack on the integrity of the Sheriff's Office personnel.

The district court held that the testimony regarding Major Payne's conviction:[5]

bore no relevance to the state's case or any issue concerning the accuracy of jail records or record keeping procedures, or, more generally, to the reliability of jail security. Contrary to the trial judge's

on-the-record conclusion that Paine's [sic] testimony was "very relevant in this case," it had no tendency to make the truth or falsity of Walker's alibi more or less probable than it would be without the evidence .... Its sole purpose and clear effect was to prejudice the jury's consideration of Walker's alibi.

The state replies that: [6]

It is submitted that the relevance of the testimony concerning Major Payne may be said to arise from the quality of the supervisory personnel selected to keep and maintain the Cuyahoga County Jail records upon which the alibi was dependent. To this extent it should make no difference whether the record indicates an act of supervisory capacity at the exact time of Walker's incarceration .... The question with regard to Major Payne relfect [sic] on the security of evidence held at the jail, and jail security was a major issue in the trial of a case in which it appears that a supposed inmate was able to commit a crime in a town sixty miles away.

We agree with the district court that (1) the record is clear that Major Payne was not employed at the jail during Walker's incarceration, and (2) testimony regarding "the security of *evidence* held at the jail" has no apparent connection to the issue whether a *prisoner* could leave the jail *and return* undetected.

B. Testimony of State Auditor.

Walker introduced jail commissary records to show that he made numerous transactions during his confinement, including one on the day of the crime. The prosecutor endeavored to undermine this circumstantial evidence by testimony of jail deputies that inmates other than Walker could have made purchases using his commissary account.

However, the state added to this impeachment by calling Frank Lancianese,

---

4. Throughout the state court trial and subsequent proceedings, references are made to a "Major Paine." This Court takes judicial notice of the fact that the correct title and name are Major Edward Payne.

5. App. 142–43.

6. State's Brief at 11–12.

an examiner for the Office of the State Auditor. He testified, over repeated objections, that (1) an audit of the commissary account funds between 1969 and 1975 revealed a $66,000 shortage; (2) the State Auditor's Office encountered "obstacles" in gaining access to the commissary records; and (3) an audit of jail vending machine profits revealed $9,000 unaccounted for by the Sheriff's Department. The prosecutor used this testimony in his closing argument as follows:

> We have brought the records to you concerning the audit of the sheriff's department for one reason alone. To show you that all the thieves and the bad people weren't on the inside of the jail; that if you lie and steal what says you won't let a prisoner out for a weekend or a few days.

The district court properly concluded that the admission of the auditor's testimony bore no relationship to the issues raised by Walker's alibi defense, was highly prejudicial, and was calculated to sway the jury on the basis of guilt by association.

The state argues that the auditor's testimony regarding theft from the commissary fund "was relevant to rebut the accuracy of commissary records relied on by Walker in support of his alibi defense." [7] This contention must be rejected, since the alleged thefts did not affect the *record of commissary transactions* relied on by Walker, but showed merely that *commissary* funds may have at some time been misappropriated by Sheriff's Department personnel. As for testimony regarding the vending machines, the state is compelled to concede that it "was not relevant by any definition." [8]

### C. References to Tom Booth.

■ Tom Booth, a member of the Cuyahoga County Sheriff's Department, attended and viewed the trial but was not a witness. The prosecution was permitted, without any basis in the record, to insinuate that several defense witnesses from the Sheriff's Department were being monitored

and coached by Tom Booth in furtherance of a Sheriff's Department coverup of improprieties. The state replies that the cross-examination of the defense witnesses was a proper inquiry to determine their credibility and whether they had in fact been coached. The state adds that since control of cross-examination is committed to the discretion of the state trial court, the trial court's rulings are not cognizable on habeas corpus. In support of the latter contention, the state cites *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762 (3rd Cir.1978). *Hickey*, however, merely held that a state trial court's admission of certain evidence did not, under the facts of that case, constitute an error of constitutional dimensions. 571 F.2d at 766. *Hickey* does not hold that errors in discretionary rulings can never rise to constitutional dimensions; on the contrary, it is clear that they can. *Gemel v. Buckhoe*, 358 F.2d 338, 340 (6th Cir.1966).

### D. Testimony of Canton Police Sergeant Newkirk.

Walker was first located in Chicago, Illinois. Newkirk was allowed to speculate, over objection, that Cuyahoga County authorities impeded Walker's extradition from Illinois to Stark County. The state makes a claim of relevancy. We agree with the district court's finding that this testimony was highly irrelevant and prejudicial conjecture.

### E. The John Appling Affair.

■ As part of its case in chief, the state called John Appling to the stand. Appling, a prisoner in 1972, had served as a "range boss" for the cell block to which Walker was assigned. He refused to be sworn, at which point the trial court began to question Appling concerning his reasons for not wanting to be sworn or to testify. After excusing the jury, the judge called counsel for both sides to the bench. At that conference, the following interchange took place:

> THE COURT: Counsel approach the bench please?

---

7. State's Brief at 12.

8. State's Brief at 13.

(COUNSEL APPROACH THE BENCH)

MR. AKE: Your honor, the testimony we have that we believe he can relate has absolutely nothing to do with any Fifth Amendment right of his. We are willing to put on for your benefit Detective Newkirk who can give you that testimony to make a determination. He basically—we are—we have testimony to the affect [sic] that he was in the jail in 1972 with Raymond Walker; that Raymond Walker— that he himself was allowed to walk free from the county jail; that he knows of certain activities in the county jail and that he in fact saw Raymond Walker on the outside of the county jail building isn't that correct?

MR. JAECK: That's correct. During the time that he was supposed to be confined.

MR. TOLLIVER: That has to be in conflict because I had the privilege of talking to this gentleman last night myself and that's not what he told me.

THE COURT: He refuses to testify.

MR. TOLLIVER: I'll take the stand myself and tell what he told me.

THE COURT: You got a subpoena on for him too.

MR. TOLLIVER: I have.

THE COURT: And I saw that it was served too.

MR. TOLLIVER: What I'm saying it that this business about having people come in to say what he said I don't see how that can be allowed.

MR. AKE: Your honor, basically the Fifth Amendment does not protect any right here, and we're asking the Court after being permitted to show that he is a hostile witness to then impeach our own witness.

After further questioning by the judge, both Appling and the judge retired to chambers. Upon their return, the judge recalled the jury and allowed Appling, without being sworn, to take the stand, identify himself and refuse to testify.

The state then questioned seven other witnesses concerning Appling. The district court, in the proceeding below, concluded that the state's questions "sought to suggest to the jury that Appling's testimony would have been helpful to the prosecution had he testified." Citing *U.S. v. Vandetti,* 623 F.2d 1144 (6th Cir.1980), which discusses the constitutional problems that arise when the state is permitted to put a witness on the stand who will assert the Fifth Amendment, the district court stated:

> The entire line of questioning about Appling leads this court to conclude that Walker's right to a fair trial was grossly prejudiced by the suggestion that evidence was not being presented to the jury which would have established Walker's guilt.

The state now contends that since defense counsel did not object to the questions at trial, any claim of error has been waived. In fact, the state court of appeals appears to have applied a procedural bar to raising the issue on appeal.[9] We cannot agree that this error is not cognizable in this habeas proceeding. The record clearly indicates that defense counsel objected to the process whereby Appling would take the stand so that the prosecution could put other witnesses on to suggest that Appling had relevant testimony to bolster its case.

 It is true that, absent a showing of cause and prejudice, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

---

**9.** The court of appeals stated:

The fifth assignment of error complains that the court erred in ordering a witness, John Appling, to testify and in permitting inquiries concerning him throughout the trial.

An examination of the record shows that John Appling was called as a state's witness and refused to take an oath (R. 51). Whereupon the court excused the jury and conducted a lengthy examination of the witness (R. 52–62). Immediately, the jury was returned to the box whereupon the witness responded to questions giving his name and address and indicating that he refused to testify, whereupon he was excused and the jury recessed for a regular recess. We find no objection to any of these proceedings and none has been pointed out to us in oral argument to the briefs. Therefore the error, if any there was, is not cognizable upon appeal. See *State v. Gordon,* 28 Ohio St.2d 45, 48, 276 N.E.2d 243.

594 (1977) precludes a federal court, as a matter of comity, from hearing an issue to which the state appellate courts applied a procedural bar. Yet, it must also be made clear that this rule is a matter of comity between the federal and state courts and should not be applied to preclude federal courts from hearing federal constitutional claims when to do so does no disrespect to the state courts and their procedural rules. *Jackson v. Cupp,* 693 F.2d 867 (9th Cir. 1982). Thus, in *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Supreme Court held that the *Sykes* rule does not apply when it is *not* clear that the state appellate court had applied a procedural bar. Furthermore, it is now well accepted that when the state appellate court ignores the state procedural default, the federal courts may also reach the merits on a habeas review. To do so does not denigrate the state procedural system. *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Hockenberry v. Sowders,* 620 F.2d 111, *reh. denied,* 633 F.2d 443 (6th Cir.), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367, *reh. denied,* 451 U.S. 933, 101 S.Ct. 2011, 68 L.Ed.2d 320 (1980); *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.1979); *Bell v. Watkins,* 692 F.2d 999 (5th Cir.1982); *Burns v. Estelle,* 592 F.2d 1297 (5th Cir. 1979), *aff'd en banc,* 626 F.2d 396 (1980); *Moran v. Estelle,* 607 F.2d 1140 (5th Cir. 1979); *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir.), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1980); *Quigg v. Crist,* 616 F.2d 1107 (9th Cir.1980); *Brinlee v. Crisp,* 608 F.2d 839 (10th Cir.1979); *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62

L.Ed.2d 733. *See also Martinez v. Harris,* 675 F.2d 51 (2d Cir.1982).

We believe that when a state appellate court applies a procedural bar that has no foundation in the record or state law, the federal courts need not honor that bar.[10] We do not by this holding sanction blanket federal court review of state procedural rulings, rather the rule is to ensure that the state courts do not block federal vindication of federal constitutional rights by procedural rulings that have no basis in state law or the facts of the particular case.

■ In Ohio, the appellate courts will not entertain an objection on appeal that was not raised before the trial court "at a time when such error could have been avoided or corrected by the trial court." *State v. Gordon,* 28 Ohio St.2d 45, 50, 276 N.E.2d 243 (1971). The underlying rationale of this rule is the same as that in the requirement of F.R.C.P. 51; that "the court should be given an opportunity to correct a mistake or defect ... when it can be accomplished during the same trial." *Presley v. Norwood,* 36 Ohio St.2d 29, 33, 303 N.E.2d 81 (1973). In *Presley,* the Supreme Court of Ohio held that the rationale used by the federal courts under F.R.C.P. 51 was equally controlling for the state rule. It explicitly adopted the rule that "once a party makes his position sufficiently clear to the trial court, the rationale for formally objecting to a charge given in disregard of that position is no longer present." *Id.* at 33, 303 N.E.2d 81, *citing, inter alia, Evansville Container Corp. v. McDonald,* 132 F.2d 80 (6th Cir.1942); *Kentucky Trust Co. v.*

**10.** We note the issue as to whether this Court can, consistent with *Wainwright v. Sykes,* reach the merits of an issue on habeas with no showing of cause and prejudice even when there is a technical state procedural bar. There appears to be confusion in this Circuit as to whether constitutional infirmities in state trials that are reviewable under state law fall outside the *Sykes* requirement. There is ample authority that when there is a plain error exception in state law, we can reach the merits absent any *Sykes* analysis, if the alleged infirmities amount to plain error. *Brewer v. Overberg,* 624 F.2d 51 (6th Cir.) *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1980);

*Berrier v. Egeler,* 583 F.2d 515 (6th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978); *Rachel v. Bordenkircher,* 590 F.2d 200 (6th Cir.1978); *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.), *cert. denied,* 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979); *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.1980). Yet, the holding in *Hockenberry v. Sowders,* 620 F.2d 111 (6th Cir.1979) appears to be in tension with that authority. *See Hockenberry v. Sowders,* 633 F.2d 443 (6th Cir.1979) (order denying rehearing) [especially the dissenting opinions of Judges Keith and Jones at 633 F.2d 445, 448]. Since we here find no adequate state procedural bar, we need not reach this issue.

*Glenn,* 217 F.2d 462 (6th Cir.1954); *Meitz v. Garrison,* 413 F.2d 895 (8th Cir.1969).

 The state appellate court's holding that there is no evidence which shows that the defendant preserved the issue for appeal by objecting at trial has no foundation in the record. We need not engage in a microscopic-type search of the trial record to conclude that the trial judge was aware that there was a serious question raised as to whether Appling should testify. Moreover, it is clear that the trial judge knew that the defense objected to the proposed minuet which would have Appling take the stand, refuse to testify only to then allow the prosecution to admit other witnesses' views of what Appling might have said. The awareness is apparent given that the trial judge raised the first issue, as to whether or not Appling should take the stand at all, himself. He dismissed the jury and proceeded to question the witness. In light of this, there was obviously no additional need to make a formal objection. Further, the defense clearly did object to the entire scheme once it became clear that Appling would not testify. We do not find and therefore cannot say that there is any support for the view that the trial court did not have an opportunity to consider the issue and correct itself. To the contrary, from the record, the conclusion is inescapable that the court clearly decided the issue against the defendant.

We thus find that we need not honor the state appellate court's claim to procedural default. Its holding is against the clear record and well-recognized state rule. While state application of its own rules of procedure would not be *reviewable* on habeas, the notions of comity that underlie the *Wainwright v. Sykes* rule do not require that we defer to applications of state procedural bars that have no foundation. There is no foundation here. To hold otherwise without such a foundation would allow state courts, through erroneous rulings, to insulate federal constitutional questions from federal review.[11]

11. We are well aware of the danger of a holding which would permit state prisoners to attack, in federal habeas actions, state appellate court applications of state procedural rules as a bar to the review of issues not raised at trial. To allow such a blanket rule would undo the cause and prejudice test enunciated in *Wainwright* and reaffirmed just last term in *Isaac v. Engle,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). *Cf. Hockenberry v. Sowders,* 633 F.2d 443 (6th Cir.1980). Yet, the Supreme Court in *Ulster County, supra,* also made clear that the comity concerns underlying the *Wainwright* rule do not weaken the federal court's duty to vindicate federal constitutional rights. When, as here, the state essentially adopts the federal rule for procedural bars and it is clear from the record that the state appellate application of the procedural bar has no foundation, we believe the comity balance weighs most heavily on the side of not deferring to the obviously erroneous state procedural bar.

The Fifth Circuit has recently stated that: the notion of comity which underlies the exhaustion doctrine must be understood not as a capitulation of federal power to state interests; rather, comity involves a delicate balance and compromise of both state and federal concerns. For as much as the unchanneled exercise of habeas corpus by the federal courts would disrupt the integrity of the state criminal process, so too would an unthinking subservience to state sovereignty render the time-honored Writ of Liberty sterile and nugatory. Comity requires sensitive accommodation, and not simply slavish adherence, to the interests of the states.
*Carter v. Estelle,* 677 F.2d 427, 442–43 (5th Cir.1982). We are of the belief that it would be slavish adherence to state interests to fail to vindicate a state prisoner's constitutional rights under the guise of honoring a state procedural ruling that is without foundation.

Our position gains added support from the Fifth Circuit's view in *Rummel v. Estelle,* 587 F.2d 651 (5th Cir.1978). There, the defendant had failed to raise an objection at trial to the application of the Texas habitual criminal statute. The Fifth Circuit rejected the argument that the petitioner was now barred from raising the issue on habeas with:

Since it is apparent that the Texas Court of Criminal Appeals has repeatedly rejected Rummel-like challenges to the Texas habitual criminal statute, we are at a loss to see how any state interest would be served by demanding that Rummel make a futile gesture at his trial.
*Id.* at 653.

At least one other court has sought the need not to defer to an application of a state procedural bar when it appeared from the record to be without foundation. In *Thergood v. Tedford,* 473 F.Supp. 339 (D.C.Conn.1978), the Court noted that even though the state had evidently applied the procedural bar, there had been an ample opportunity for the state courts

### F. The Use of News Clippings.

■ The state repeatedly used newspaper clippings to "refresh the recollection" of defense witnesses regarding the "horrible conditions" at the jail. The defense witnesses in several instances clearly stated that they remembered nothing about the alleged incidents described in the newspapers, yet the state persisted in its line of questioning. The district court correctly found that the state was successfully putting the substance of the articles in evidence. As the district court stated:[12]

> The danger of unfair prejudice to Walker is obvious. Newspaper articles about matters of substantial public controversy (*i.e.,* the jail's "horrible conditions," the prisoners' hunger strike "against medical facilities, bail procedures and overcrowding," Tr. 667, the public probe into the use of drugs by inmates, the destruction of commissary fund records and the state audit) when brought before the jury inhibited a dispassionate consideration of an accused's guilt or innocence. What Cuyahoga County did or didn't do in these matters could not be attributed to the defendant. It appealed to anti-Cuyahoga County provincialism at the expense of the defendant. This heavy baggage was added to the total irrelevance of this evidence on the issues to be decided by the trier of fact.

In justification, the state once again simply relies on the discretion of the state trial court. That is clearly not enough. A state trial judge cannot operate beyond the requirements of the United States Constitution by claiming discretionary authority. We agree with the conclusion of the district court that "parade[ing]" newspaper clippings before the jury in the manner done here constituted transgressions which "invaded the defendant's right to a fair trial." We reject these procedures as abhorrent and repugnant for their inflammatory and prejudicial effect upon the jury.

■ We need not determine whether each of the alleged errors would, alone, require that we find a deprivation of due process. It is clear that the cumulative effect of the conduct of the state was to arouse prejudice against the defendant to such an extent that he was denied fundamental fairness. The trial was inflamed by marginally relevant and irrelevant evidence that was highly prejudicial. The contrary contentions of the state are supported by neither controlling authority nor considerations of fairness and justice. By allowing the trial to focus more on the claimed corruption of the Sheriff's Department than on the issue of Walker's guilt or innocence, the trial court denied Walker due process of

---

to consider the issue and correct the defect. The Court also reported that "while it is true the petitioner did not use the precise term 'exception' in response to the court's adverse ruling on the question in issue here, his request to be heard outside the presence of the jury after the court ruled certainly connoted an objection to that ruling . . ." Believing that the petitioner had objected, the court decided the merits in the habeas proceeding.

Finally, the position we adopt here is not in conflict with *Hockenberry v. Sowders, supra.* There, this Court concluded that under *Wainwright,* the federal courts cannot make an independent application of the state's contemporaneous objection rule.

*Hockenberry* is significantly distinguishable. The contemporaneous objection rule there included the discretionary caveat that the state appellate court could ignore the procedural bar if manifest injustice resulted. This Court merely held that federal courts must, to some extent, defer to a state's assessment that the discretion to ignore the bar should not be exer-

cised. Here, there is doubt as to the factual issue concerning whether or not there was an objection at trial. We do not invade upon the state's discretionary determination concerning its own procedural rule. Rather, we are deciding whether an erroneous factual determination by the state court in applying its nondiscretionary rule should bar federal relief.

That *Hockenberry* requires that we make an assessment as to whether the state procedural ruling is without foundation is clear from the Court's statement that "it is clear that the central question in such an instance is whether the state court denied petitioner's claim on *an adequate* and independent state procedural ground." *Id.* at 115. When the state court erroneously reads a clear record to find no objection by the defendant, the state ground cannot be said to be an adequate one. *See also* footnote 10, above.

**12.** App. 158.

law in violation of the Constitution. We therefore affirm the district court's grant of the writ.

Our close examination of the trial court record compels an additional comment. Such a trial as was conducted here is a reminder of the role the Great Writ must play in our jurisprudence. When a trial court permits the constitutional protections to be overridden by zealous prosecutors without interjecting restraining or curative measures, the federal courts must be alert to act as the district court did here. The methods utilized by the state to obtain this conviction, in the words of Justice Frankfurter, clearly "offend 'a sense of justice'." *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952) *citing Brown v. Mississippi,* 297 U.S. 278, 285–6, 56 S.Ct. 461, 464–5, 80 L.Ed. 682.

### III

■ The remaining issue to be decided is whether the evidence against Walker is so insufficient as to preclude a new trial. We must hold that under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and for the reasons set forth by the district judge, a new trial is not foreclosed.

The state placed Walker at the scene of the crime through testimony of (1) Davidson and Ogletree, accomplices to the crime; (2) Rene Clark, a disinterested eyewitness; and (3) Mabel Mack, wife of the deceased. The state also placed Walker outside of the jail during the relevant period through testimony of (a) Clarence Cash, who allegedly spoke with Walker at an "after hours" bar during June 1972, (b) James Curry, who allegedly spoke with Walker at a garage around mid-June, and (c) Mrs. Willie Mae Hart, who resided near the A & P store and who saw a brown automobile leave the scene of the crime driven by a black man with a bad complexion "similar to" Walker's.

The magistrate rejected the testimony of these individuals as follows: (1) Davidson and Ogletree were promised leniency, and two witnesses testified that Ogletree named Walker because Walker was sleeping with Ogletree's wife; (2) Rene Clark had earlier identified another suspect in a lineup in which Walker participated; (3) Mrs. Mack said only that Walker "looked like" the killer; (4 and 5) Clarence Cash and James Curry had logical inconsistencies within each of their accounts; and (6) Mrs. Hart specifically stated that she was not saying Walker was the man she saw.

■ The district court held that the magistrate had erred by weighing the testimony and failing to view the evidence in the light most favorable to the prosecution. Since credibility is not a matter of review for a federal habeas corpus court, *Pigford v. United States,* 518 F.2d 831, 836 (4th Cir. 1975), and since the testimony of the state's witnesses, if believed, would provide sufficient evidence to support the conviction, the court concluded that *Jackson* did not preclude retrial.

Walker's main objection to this conclusion is as follows:

Rather than a selective review of the prosecution's case, *Jackson* requires that all the evidence be weighed so as to ascertain whether any rational trier of fact could find guilt beyond a reasonable doubt.

\* \* \* \* \* \*

No matter how favorably the prosecution's case may be viewed, no rational mind could accept the testimony of Ogletree and Davidson over the unsolicited and independent testimony of [certain witnesses for defendant].

This argument must fail since it merely urges this Court to weigh the credibility of the witnesses. This we cannot do. We agree that, from the record, the witnesses for Walker appear more credible than those for the state, and if we were jurors, we might be inclined to vote to acquit in this case. But the inquiry as to sufficiency of the evidence does not require or permit a court "to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Looking at

the case in the light most favorable to the prosecution appears to mean resolving credibility conflicts in favor of the prosecution. *Compare Jackson:*

> a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

We believe the district court was correct in its conclusion that retrial is not precluded by *Jackson.* Therefore, the grant of the writ and the order granting the state 120 days to retry Walker is AFFIRMED.

BAILEY BROWN, Senior Circuit Judge, concurring in the result.

I concur with the panel opinion that this habeas petitioner, Walker, was denied federal due process by allowing into evidence a great deal of totally irrelevant and highly prejudicial evidence. I recognize that such rulings on evidence must be egregious to amount to constitutional error, but this is such a case. I also agree with the panel opinion that, however, the state introduced enough evidence of guilt to allow the state to try Walker again.

On the other hand, I am concerned that the panel opinion, in dealing with "The John Appling affair" (at 964), assumes that there is a problem in the area of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and uses this as a springboard for the *tour de force* that follows. In the course of this rather extended discussion, the opinion suggests, *inter alia,* that a federal habeas court may, under *Wainwright,* reach the merits of an issue where no cause and prejudice is shown, where there is a "technical state procedural bar" and there is "plain error." (at 966, n. 10.) In fact, however, there simply is no *Wainwright* problem to be dealt with at all.

While it is true that the Ohio Court of Appeals did (App. at 6) rely on the failure of defense counsel to object to the procedure whereby Appling was placed on the stand before the jury and claimed his im-

munity not to testify, it did not rely on any alleged failure to object to questions put to other witnesses calculated to suggest to the jury that Appling's testimony would have been favorable. The Ohio Supreme Court also did not rely on an alleged failure to object to the testimony of these other witnesses in reaching its decision. Moreover, respondent below, Engle, does not rely in his brief here on any such alleged failure to object to the testimony of these other witnesses. It is this testimony that Walker complained about in district court and in this court. This part of the panel's opinion is dictum and totally unnecessary.