904 F.2d 708
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles H. REED, Petitioner-Appellant,
v.
Dewey SOWDERS, Warden, Respondent-Appellee.
 Nos. 89-5529, 89-5562 and 89-5616.
 United States Court of Appeals, Sixth Circuit.
 June 12, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant Charles H. Reed appeals the District Court's denial of his petitions for writs of habeas corpus on his state crimes of 1) rape and sodomy, and 2) armed robbery. His armed robbery sentence made him a Persistent Felony Offender, which increased his rape and sodomy sentence from 20 years on each of four counts to life imprisonment. We conclude that the writ concerning his rape and sodomy conviction was appropriately denied, but that the writ concerning the armed robbery sentence should have been granted. We therefore REVERSE case nos. 89-5529/5562 and AFFIRM in part in case no. 89-5616 and REMAND with instructions to the District Court to adjust appellant's sentence in accordance with this opinion. The facts surrounding each appeal are discussed separately below.
 
 
 2
 Appellant was charged and convicted in Kentucky state court in 1985 for raping and sodomizing Elizabeth Halliday. He was sentenced to 20 years imprisonment on each of four counts. His conviction as a Persistent Felony Offender elevated each count to life imprisonment. He appeals the denial of his petition for habeas corpus claiming that the evidence was insufficient to convict, that evidentiary errors denied him a fundamentally fair trial and that his counsel was ineffective. We agree with the District Court that there was no constitutional error in this conviction.
 
 
 3
 The state's evidence disclosed that appellant picked Halliday up in his van near the University of Kentucky, where she was a student. He allegedly asked her for directions and, after pretending to not understand, persuaded her to enter his van. He then grabbed her and pulled back his coat to display a gun. Appellant then drove to a secluded location with Halliday, forcing her to crouch between the seats, and raped and sodomized her. Halliday apparently attempted to prevent him from injuring her further by saying that she would not turn him in and that she forgave him. He dropped her off in the parking lot of a department store, from which she walked back to her apartment. Later, Halliday called a rape crisis center and went to the emergency room of the campus medical center. She gave her clothes to a police officer and assisted in the production of a composite photograph. At that time, she said the rapist was in his thirties, was rather thin, wore a plaid shirt and black pants, and that there was nothing unusual about his teeth. She also said the rapist's van had an automatic transmission. Somewhat later she told a different detective that the rapist was a bit heavy, had a heart-shaped tattoo on his right forearm, and was missing some of his upper teeth. Her explanation for these different descriptions was presented to the jury.
 
 
 4
 The police arrested appellant on April 17, 1985. They photographed his van and obtained physical evidence such as blood samples and head and pubic hair.
 
 
 5
 Appellant first claims the trial court abused its discretion by failing to direct a judgment of acquittal. He argues that Halliday, the only witness against him, gave differing statements regarding his description and the description of his van. He points to various statements that, taken together, seem inconsistent. He then argues that no reasonable juror could have believed her assertions and that he was thus entitled to a judgment of acquittal.
 
 
 6
 In granting such a motion, the court must view the evidence in the light most favorable to the non-moving party and may only grant the motion if, on such a view, reasonable minds could not differ. United States v. Townsend, 796 F.2d 158, 161 (6th Cir.1986). Halliday positively identified appellant both before and during the trial. She had ample time to observe appellant during the assault, which lasted approximately four hours. The issue is merely one of witness credibility, and the jury chose to believe Halliday over appellant. Appellant fails to establish error of such magnitude in the state proceedings that he was denied a fundamentally fair trial. See Bell v. Arn, 536 F.2d 123 (6th Cir.1976). Habeas relief on the basis of insufficient evidence was appropriately denied by the District Court.
 
 
 7
 Appellant next argues the state trial court erroneously refused to let the jury view his van. Halliday stated at trial that pictures of appellant's van were of the same van in which the rape took place. Appellant claims the jury should have been permitted to examine his van because they would have seen that it was beige, rather than light blue or white as Halliday stated, and that the passenger window was incapable of being rolled up, indicating that Halliday misidentified the van or fabricated her story because she stated that the rapist told her to roll up the passenger-side window prior to the rape, which she did. Appellant also maintains that his van's motor is between the seats, making it impossible for Halliday to have crouched between them as she contended.
 
 
 8
 First, state law errors regarding the admissibility of evidence are usually not sufficient to provide habeas relief. Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir.1984), cert. denied, 470 U.S. 1050 (1985). We will grant habeas relief only if the error denies fundamental fairness. Walker v. Engle, 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962 (1983); Bell, 536 F.2d 123. In this case, the trial court had abundant justification for refusing to allow the jury to examine the van and instead rely on the photographs. First, the photos were taken approximately five days after the rape and while appellant was in police custody. Second, by the time of trial--four months after the incident--the van was not in police custody. The trial court reasonably could have concluded that appellant's wife had the opportunity to tamper with the van. The photographs clearly provided the most reliable evidence. The trial court did not abuse its discretion in disallowing examination of the van and, a fortiori, appellant was not denied a fundamentally fair trial.
 
 
 9
 Appellant claims his trial counsel was ineffective under the standard announced in Strickland v. Washington, 466 U.S. 668 (1984). That standard is a demonstration first "that counsel's performance was deficient," and second "that the deficient performance prejudiced the defense." Id. at 687. Appellant must show a reasonable probability that absent counsel's errors, the result at trial would have been different. Id. Appellant fails to meet this standard.
 
 
 10
 Appellant asserts many points of error in his counsel's conduct, most of which can be dealt with summarily. The first is a letter written by his attorney to him saying that without more money, he could only give appellant a "half-assed defense." Appellant says this presented a "conflict of interest" between him and counsel and that his counsel was not zealous enough in his defense. However, the letter at most establishes that there was some tension between appellant and his counsel over payment. In any event, there is no indication that it made his performance deficient or prejudiced appellant's case.
 
 
 11
 Secondly, he claims his counsel failed to investigate witnesses, specifically the victim and the investigating police officers. He cites Thomas v. Lockhart, 738 F.2d 304 (8th Cir.1984), for the proposition that an attorney's failure to investigate witnesses constitutes ineffective counseling. However, appellant must also show that investigation would have led to testimony useful in his defense, Alexander v. McCotter, 775 F.2d 595 (5th Cir.1985), and that the witness would give favorable testimony at trial. Id. at 602; Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir.1981). Appellant merely asserts that investigation would have shown that the government's case was a "frame," that he was arrested without probable cause, and that he was falsely arrested and subsequently prosecuted by the police in an effort to avoid a civil prosecution for violating appellant's rights. With nothing more than mere conjecture about what further investigation would uncover, we cannot say counsel's performance was deficient. Moreover, even if we assume arguendo that the failure to investigate was deficient conduct, appellant fails the Strickland requirement of showing a reasonable probability that the outcome of his trial would have been different.
 
 
 12
 Appellant next argues his counsel was ineffective because he failed to honor his request to take a polygraph test before trial. After his conviction, such a test indicated he truthfully answered "no" to the question of whether he was guilty of the charges. We need not consider this point on appeal because it was not presented to the District Court in appellant's petition for habeas relief, nor was it raised and exhausted in the state proceedings.
 
 
 13
 Appellant next claims his counsel failed to file a brief in support of his motion to suppress before trial. At the suppression hearing, the judge granted appellant's counsel's request to submit a memorandum on his suppression claims. However, counsel filed a waiver of the right to file and the suppression was subsequently denied. Appellant claims that the following evidence would have been suppressed: 1) a holster; 2) photos of his van; 3) physical evidence tested by the police (e.g., the rape victim's clothes) because there was no chain of custody; and 4) Halliday's in-court identification. Even if we assume that it was incorrect for appellant's counsel to fail to file the suppression memorandum, we agree with the lower court that there was nothing improper in his arrest. The testimony of the arresting officers indicates that appellant was arrested on another similar charge and, while in custody, was identified by Halliday. Because all of the evidence sought to be suppressed stemmed from a proper arrest, waiving the right to file a suppression memorandum was harmless.
 
 
 14
 The second habeas action arises from appellant's 1979 guilty plea to armed robbery. The District Court denied his petition for habeas relief finding, after an evidentiary hearing, that his guilty plea was entered voluntarily and knowingly. Appellant claims that his plea was involuntary because 1) the guilty plea form he signed was modified without his knowledge after he signed it, and 2) he was not informed that intent, here knowledge that another was committing a crime and knowingly providing the perpetrator with means or opportunity, was a necessary element of the crime of facilitation to commit robbery. On review of the record, we conclude that the District Court was not clearly erroneous in finding that the modification of the plea form occurred before appellant signed it and that he knew he was pleading guilty to facilitation of first degree robbery. However, we cannot agree that appellant was adequately informed of the intent or state of mind requirement of the crime for which he pleaded guilty.
 
 
 15
 Appellant and another man were charged with first degree robbery in 1979 in Kentucky state court for using and threatening to use physical force while robbing Roger Ware. Appellant pleaded guilty to facilitation to commit robbery. He contends that he and his wife were giving three men a ride in his car. After he asked them to leave the car, two of the men that were riding in the car robbed the third, the victim, Roger Ware. Appellant maintains that he had no knowledge that the two men planned to rob Ware, nor did he intend to or actually assist them in any way. The state does not appear to contest the fact that Ware was robbed after he exited the car.
 
 
 16
 One week before trial, appellant's counsel learned that one of the men charged in the indictment had pleaded guilty to the reduced charge of second degree robbery. Appellant's counsel at the time, Richard Rose, negotiated a guilty plea for Reed. Appellant claims that when he signed the guilty plea form, it said that he was pleading guilty to facilitation of second degree robbery, a misdemeanor, but that after he signed the form, the word "second" was crossed out and "first" written in its place. Additionally, appellant claims that he was never made aware that intent was a necessary element for conviction of facilitation to commit robbery. Appellant was sentenced to five years imprisonment. Entry of that judgment was withheld, however, and appellant was given five years probation. Appellant violated his probation. He appealed the probation violation which was affirmed. In the meantime, he had again been granted "shock probation" under Ky.Rev.Stat.Ann. Sec. 439.265 (Banks-Baldwin 1989). In July 1986, appellant filed a motion in the state courts to vacate his sentence under 1983 Ky.Rev.Stat. & R.Serv. 11.42 (Baldwin) alleging ineffective assistance of counsel and an involuntary plea which was denied by the sentencing court and the Kentucky Court of Appeals. The state concedes he has exhausted his state remedies.
 
 
 17
 There is no state record of the taking of appellant's guilty plea. Consequently, the state must show by clear and convincing evidence that appellant entered his plea willingly and voluntarily. Roddy v. Black, 516 F.2d 1380, 1384 (6th Cir.), cert. denied, 423 U.S. 917 (1975) ("[i]n the face of an inadequate transcript at the time of a guilty plea's acceptance, the State must make a clear and convincing showing that the plea was in fact knowingly and understandingly entered"). In Henderson v. Morgan, 426 U.S. 637 (1976), the Supreme Court held that the defendant's guilty plea was involuntary where he pleaded "guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." Id. at 638. The defendant in Henderson was charged with first degree murder. His attorneys gave him advice regarding the length of time he would have to serve for different lesser included offenses, but failed to explain to him the required element of intent for second degree murder. The defendant testified that had he known of the intent requirement, he would not have pleaded guilty. The Court held on those facts that it was "impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary." Id. at 646.
 
 
 18
 Appellant pleaded guilty to facilitation, which is governed by Ky.Rev.Stat.Ann. Sec. 506.080. That section provides:
 
 
 19
 A person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime.
 
 
 20
 (Emphasis added.) Intent to facilitate is a clear requirement under the Kentucky statute. The testimony of counsel who advised appellant to enter the plea agreement indicates that he did not inform appellant of any intent requirement:
 
 
 21
 Q. Did you explain the crime of facilitation to Mr. Reed?
 
 
 22
 A. Yeah, sure.
 
 
 23
 Q. Can you tell me generally what you said?
 
 
 24
 A. It just means that--facilitation is a statute that says that a person who provides another with the means to commit a crime can be guilty of the lesser included offense of facilitating that crime.
 
 
 25
 Joint App. at 94. Appellant testified that his attorney failed to inform him of any intent requirement with regard to facilitation of robbery:
 
 
 26
 Q. Tell me the circumstances of that guilty plea. In other words, how did you come to be in court that day?
 
 
 27
 A. Rick [appellant's trial counsel] called and said that ... they needed me down there that day.... [H]e said ... you've got to plead guilty to this charge [facilitation of robbery].... And I said Rick, I don't see no sense in pleading guilty to something I haven't done. I've not robbed nobody, I didn't help rob nobody. He said facilitation, said you're misunderstanding it. Facilitation doesn't mean you done it. It means you were there when it happened.
 
 
 28
 Q. Did he explain to you that it required you knowing that this was going to happen?
 
 
 29
 A. No, sir, he did not. He said regardless of whether I knowed the robbery happened or not, if I was there, I was guilty of facilitation.
 
 
 30
 Joint App. at 67-68. Appellant's wife also testified that he was not informed of the intent requirement before he pleaded guilty:
 
 
 31
 Q. Can you tell the court what was said or done in that conference?
 
 
 32
 A. Oh, he told Charlie he was pleading guilty to criminal facilitation to second-degree robbery and ... Charlie asked him what criminal facilitation was and he told him that meant that he was there when something happened, whether he had anything to do with it or not.
 
 
 33
 Joint App. at 81-82. Based on the testimony given in the proceedings below, both of appellant and his trial counsel, it appears that appellant was not adequately told of the element of intent with respect to facilitation of robbery.
 
 
 34
 In response, the government makes no attempt to distinguish this case from the facts of Henderson. It merely argues that appellant was aware that intent was an element of facilitation to commit robbery. It argues that 1) appellant knew in fact that intent was a necessary element of facilitation, and 2) he waived any right to make such a claim when he signed the plea agreement form. In support of the former claim, the government points to his trial counsel's testimony that appellant talked about using lack of intent as a trial defense. Appellant's trial counsel testified:
 
 
 35
 Q. Did he [appellant] discuss any possible defenses with you?
 
 
 36
 A. Yeah, when we were talking about going to trial, he said let's just go and say I was driving and I didn't do it, I didn't know what these guys were going to do, and I was prepared to defend him that way.
 
 
 37
 Joint App. at 98. However, it is clear from the context of this statement that the attorney was referring to a discussion regarding his defense to the first degree robbery charge. Such a discussion would only be relevant to appellant's knowledge of the intent element of first degree robbery, not intent with respect to facilitation for robbery. He testified further:
 
 
 38
 Q. Did you ever discuss with Mr. Reed or did he tell you that he didn't know specifically what Valdez and Rhodus were going to do? He told that--Mr. Reed told you that he just drove the car, but then he had no knowledge of what else was going to happen?
 
 
 39
 A. I don't remember Charlie ever admitting to me that he was in on a plan to rob anybody. And the discussions never really got to that point. What really happened was they went from ten years to two years and Charlie said he would plead guilty.
 
 
 40
 Joint App. at 94.
 
 
 41
 The government also points to item ten on the plea agreement waiver form, which states that:
 
 
 42
 My attorney has explained to me and I understand what facts the Commonwealth would have to prove beyond a reasonable doubt in order to convict me of the crime of robbery first degree, and any lesser included offenses, if I elected not to plead guilty and the issues were presented to a jury.
 
 
 43
 Joint App. at 49. This was the language upon which the magistrate and District Court based their holding. We do not agree that such a provision is sufficient to forfeit appellant's rights under Henderson. Item ten contains no notice of the elements of facilitation and thus does not stand as independent evidence that appellant knew the elements of the crime. All the waiver says is that appellant acknowledges that his attorney explained to him first degree robbery and any lesser included offense. Appellant claims he signed the waiver on the mistaken belief that his attorney had adequately informed him of the elements necessary to be convicted of facilitation of robbery. As the preceding discussion indicates, his counsel's explanation of the elements of facilitation was inadequate because his counsel did not tell him of the intent requirement. Appellant's signature does not constitute "clear and convincing" evidence that he was adequately informed and, by extension, does not show clearly and convincingly that he entered the plea agreement voluntarily.
 
 
 44
 The District Court also had the testimony of the judge who accepted the guilty plea. However, it too does not establish that appellant was informed of the intent requirement. The judge testified that he "advised [appellant] fully as to the crime for which he was pleading guilty," Joint App. at 56, and that his general practice is to tell defendants "of the nature of the crime for which they are entering a plea of guilty to make sure they fully understand the nature of that crime." Joint App. at 57. However, it is clear from his testimony that he neither set out each element of the offense to which appellant pleaded guilty nor did he read the statute to him.
 
 
 45
 Q. Now, you've said you informed him of the nature of the amended charge, in this case, it was facilitation to commit robbery in the first degree.
 
 
 46
 A. That's correct.
 
 
 47
 Q. Do you read the statute?
 
 
 48
 A. I do not.
 
 
 49
 Q. Can you maybe tell me what you do?
 
 
 50
 A. Well, for example, in this case, you have been indicted for the offense of receiving stolen property, a felony, the commonwealth has recommended if you enter a plea of guilty, that you be permitted to enter a plea of guilty to a lesser included offense of receiving stolen property under a hundred dollars. Do you understand the nature of this proposed amendment? That's one example.
 
 
 51
 Q. So you don't necessarily list, if there are five--three or four elements to a particular crime, you don't necessarily go through each of those particular elements?
 
 
 52
 A. No, because I think we can get a little bit ridiculous.
 
 
 53
 Q. Leave that up to the attorneys, I assume, that's their job?
 
 
 54
 A. That's part of their work.
 
 
 55
 Joint App. at 60. As discussed above, however, appellant's counsel did not adequately advise appellant that intent was a necessary element of facilitation. The judge also testified that he did not always ask for the factual basis for a plea. We can only conclude that the state has failed to show by clear and convincing evidence that appellant entered his guilty plea voluntarily within the meaning of Henderson. The judgment of the District Court denying appellant's writ of habeas corpus in case nos. 89-5529/5562 is therefore REVERSED. The action is remanded to the District Court with directions to issue the writ. We AFFIRM the District Court's denial of appellant's writ in case no. 89-5616 in all respects except the sentence on the Persistent Felony Offender count.
 
 
 56
 We REMAND the action to the District Court for consideration of the appropriate remedy in view of the grant of the writ on the armed robbery conviction, one of the convictions which supported appellant's persistent felony conviction.