United States Court of Appeals,

Fifth Circuit.

No. 90–1230.

George Guy DERDEN, III, Plaintiff–Appellant,

v.

Sheriff Sammie McNEEL and Attorney General—State of Mississippi, Defendants–Appellees.

Dec. 16, 1992.

Appeal from the United States District Court for the Northern District of Mississippi.

Before POLITZ, Chief Judge, REYNALDO G. GARZA, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, EMILIO M. GARZA, and DeMOSS, Circuit Judges.[*]*

EDITH H. JONES, Circuit Judge:

On initial hearing this case, the majority of a panel of our court concluded that an accumulation of actions prejudicial to petitioner George Guy Derden deprived him of a fundamentally fair trial for burglary in Mississippi state court. *Derden v. McNeel,* 938 F.2d 605 (5th Cir.1991). After *en banc* rehearing, we now hold that federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). This case fails to satisfy those standards.

## I. BACKGROUND

A rational jury could have convicted Derden of participating in the burglary of Wade's Grocery in Pheba, Mississippi shortly after midnight on February 10, 1983.[1] The burglars unsuccessfully attempted to remove a safe, then fled in mid-crime at the sight of an approaching

---

[*]Judge Barksdale recused himself and did not participate in this decision.

[1]*Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Derden's attempt to contest the constitutional sufficiency of the evidence against him was perfunctory at best.

vehicle. Three of the burglars, each of whom had reached a very favorable deal with the prosecution, testified to Derden's involvement. The co-conspirators were Willie Sherrod, who worked at Derden's carpet store in Columbus, Mississippi and had a string of armed robberies in his past, and Jay Posey and Tommy Turner, young men who first met Derden the night of the burglary and barely recognized him later. They all testified that Derden drove them in his van with his girlfriend Pam Smith to Wade's Grocery and was participating in the crime until it aborted. Derden, Turner and Smith escaped in the van, leaving Posey and Sherrod to hitchhike through the darkness and rain. At a nearby farmhouse, Posey and Sherrod found a ride back to Turner's West Point, Mississippi apartment. According to Turner, the group in Derden's van experienced car trouble and drove along back roads, finally dropping Turner off in West Point before Posey and Sherrod arrived. Derden was stopped in his van and ticketed at 3:45 a.m. for having broken tail lights.

In his defense, Derden tendered an alibi and challenged the credibility of the other burglars. His alibi was supported principally by his own testimony and that of Pam Smith. According to this tale, Derden had lent his van to Sherrod that night while he and Smith went to Houston, Mississippi in Sherrod's car and measured two houses for carpet until midnight. Neither Smith nor Derden, however, had been able to identify the houses or their occupants. The alibi was subjected to devastating cross-examination. For instance, Derden produced receipts and business records of minutiae such as three-year old gasoline purchases, yet he had mysteriously lost the receipt for the carpet he sold in Houston that night. Further, Derden's counsel agreed with the prosecutor to introduce in evidence Derden's statement to the sheriff, made during investigation of the crime. As luck would have it, some hearsay information on that statement directly contradicted Derden's testimony that he switched vehicles with Sherrod at the Apollo Club the night of the burglary.

Derden sought to undermine the confessed burglars' testimony by emphasizing the favorable treatment they received from the prosecutors. He also tried to show that their chronologies of events were hopelessly inconsistent, hence untrustworthy. The farmer's son who agreed to give Sherrod and Posey a ride when they showed up on his father's doorstep after midnight testified that he dropped them off in West Point by about 2:00 a.m. All three burglars testified that Turner had returned to his

West Point apartment before Sherrod and Posey.  But according to the sheriff who investigated the crime, the route of Turner's odyssey in Derden's van, which included a stop to work on the tail light, could not have landed Turner at home until well after 3:00 a.m.

The jury found Derden's defense unpersuasive.  He was sentenced to seven years in Mississippi state prison.  On appeal to the Mississippi Supreme Court, Derden raised numerous points of error similar to those he later argued in federal court:  prosecutorial misconduct during *voir dire,* judicial bias, withholding of exculpatory evidence, and lack of fundamental fairness.[2]  With one exception, the Mississippi Supreme Court found Derden's arguments so meritless that they warranted no discussion.  *See Derden v. State,* 522 So.2d 752, 755 (Miss.1988).  The state supreme court did rule that the prosecutor violated Mississippi law in the conduct of *voir dire* on the co-conspirators' testimony, but it held that this error was later cured by the trial court's jury instruction.[3]

Unsuccessful on direct appeal, Derden sought habeas corpus relief.  He persuaded the magistrate that "the trial judge's demeanor coupled with the prosecutor's over-zealous actions" impugned Derden's credibility in a case that hinged on credibility choices and produced a pervasively prejudicial trial atmosphere.  The district court rejected the magistrate's conclusion and held that the

[2]The numerous appellate points raised by Derden in the Mississippi Supreme Court relative to the fundamental fairness of the trial were:  (A) evidence of fundamental unfairness was adduced at the pretrial hearing;  (B) the prosecution's obtaining promises by the jurors to believe the State's co-conspirator witnesses contributed to the denial of a fair trial;  (C) the trial judge's frustrating defense counsel's attempt to make an opening statement contributed to an unfair trial;  (D) the trial judge's commenting that neither he nor the jury "cared" about one of the accused's defenses contributed to the denial of a fair trial;  (E) The trial judge's continuous correction of the accused, and admonitions to him in front of the jury, contributed to the denial of a fair trial;  (F) the trial judge's admission of the hearsay statement by Richard Dismuke that Derden had not been at the Appollo Club on the night of the burglary in question contributed to the denial of a fair trial;  (G) the two-and-one-half-year delay in the trial contributed to the denial of a fair trial;  (H) permitting the co-indictee, Pam Smith, to be cross-examined about her failure to come forward with a statement concerning the burglary contributed to the denial of a fair trial;  and (I) permitting the jury to hear evidence of other crimes contributed to the denial of a fair trial.

[3]In Mississippi, jurors are instructed to view the testimony of co-conspirators with great caution and suspicion.  Contrary to this rule, the prosecutor sought to obtain assurances that the jurors would treat the co-conspirators' testimony like any other.  The trial court, while not precisely condoning these questions, allowed several of them to be posed.  He later instructed the jury that, "I charge you that Jay Posey, Willie James Sherrod and Tommy Turner have admitted being accomplices to this burglary.  You are to regard this testimony with great suspicion and to consider it with caution."  The Mississippi Supreme Court held the *voir dire* error was cured by this instruction.  *Derden,* 522 So.2d at 754.

cumulative effect of the events at trial did not fatally undermine its fundamental fairness or the accuracy of the verdict. The panel majority in this court read the record and held that the challenged events at trial were so unfair to Derden that while not individually meriting the grant of the Great Writ, they cumulatively violated his constitutional right to due process. We reverse course again, and, disagreeing with the panel majority's application of the cumulative error theory, we affirm the district court's denial of relief.

## II. DISCUSSION

That the constitutionality of a state criminal trial can be compromised by a series of events none of which individually violated a defendant's constitutional rights seems a difficult theoretical proposition and is one to which the Supreme Court has not directly spoken.[4] With one exception, however, our sister circuits have held in *dicta* that federal habeas relief may issue if a defendant was denied fourteenth amendment due process by the cumulative effect of errors committed in a state trial, which together deny fundamental fairness.[5] We join the majority "rule" subject to the following discussion.

Several of the circuit court decisions drew an analogy with cases on direct criminal appeal in which the possibility of cumulative error is often acknowledged but practically never found persuasive.[6] Such rote analogy is misleading. The standard for reversal on direct appeal of a criminal

---

[4]While one court has cited *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952), in support of a cumulative error theory, *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983), that is rather like citing the Declaration of Independence: general statements about inalienable rights or "fundamental fairness" tell us little about the prerogatives of an individual in concrete factual situations.

[5]*See, e.g., Lundy v. Campbell,* 888 F.2d 467, 481 (6th Cir.1989), *cert. denied,* 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990); *Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989); *Matlock v. Rose,* 731 F.2d 1236, 1244 (6th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985); *Walker v. Davis,* 840 F.2d 834, 838 (11th Cir.1988) (arguably a prosecutorial misconduct case rather than cumulative error); *but see Girtman v. Lockhart,* 942 F.2d 468, 475 (8th Cir.1991), (citing *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991) ("each habeas claim must stand or fall on its own.").

[6]*See, e.g., United States v. Middlebrooks,* 618 F.2d 273, 277 (5th Cir.1980), *cert. denied,* 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980); *United States v. Candelaria–Gonzalez,* 547 F.2d 291, 297 (5th Cir.1977). It must be remembered that errors that might justify reversal of a

conviction, whatever it may be, should logically be more flexible than that available on collateral review. We are not here considering the basis for cumulative error review on direct appeal of federal convictions. However, because the habeas cases have also rejected cumulative error theories on the facts presented, their definitions of it are perfunctory. As an example, the Sixth Circuit describes cumulative errors as those that do not individually deny due process "but, when considered together, leave "no doubt that the jury was too tainted and influenced to be able to give the petitioner a fair trial.' " *Lundy,* 888 F.2d at 481. Our research has revealed only two cases in which federal habeas relief was granted because of an accumulation of trial court errors. In these cases we may glimpse the rationale for the cumulative error theory. This court essentially relied on such a theory when it granted the writ to a defendant whose trial was overshadowed by an ambiguous stipulation that prevented him from arguing an insanity defense while the prosecutor repeatedly asserted, contrary to overwhelming medical evidence, that the defendant could not have been insane when he murdered his wife and slashed his own wrists. *Guidroz v. Lynaugh,* 852 F.2d 832, 837 (5th Cir.1988). The results of these errors likely led to the rendition of an inaccurate verdict. In *Walker v. Engle,* 703 F.2d 959 (6th Cir.1983), *cert. denied,* 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983), the court found that six types of evidence introduced by the prosecution were calculated "to arouse prejudice against the defendant to such an extent that he was denied fundamental fairness." 703 F.2d at 968. The trial was "inflamed by marginally relevant and irrelevant evidence that was highly prejudicial." *Id.* The prejudicial evidence allowed the trial "to focus more on the claimed corruption of the Sheriff's Department than on the issue of Walker's guilt or innocence ..." of first degree murder.[7] *Id.* These cases fit the Supreme Court's description of a denial of due process as "the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we

case under the federal supervisory power need not be so egregious as those that would justify granting collateral relief against a state court judgment. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). *But compare United States v. Diharce Estrada,* 526 F.2d 637 (5th Cir.1976) (conviction reversed on direct appeal because court's rush to try case quickly deprived defendant of a fair trial).

[7]In *Walker,* 840 F.2d at 838, the Eleventh Circuit held that the writ could be granted where the prosecuting attorney had also testified as a witness against the defendant. The case was remanded, however, for an examination of procedural default.

must find that *the absence of that fairness fatally infected the trial;* the acts complained of must be of such quality as *necessarily prevent a fair trial.*" *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941) (emphasis added).

Few defendants, however, will succeed in demonstrating on collateral review that their prosecutions merited such condemnation. As the Supreme Court has recently reminded us, "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). Heeding this admonition, we adopt a particularly cautious approach to granting habeas relief for cumulative errors. "Cumulative error" is an infinitely expandable concept that, allowed to run amok, could easily swallow the jurisprudence construing the specific guarantees of the Bill of Rights and determining minimum standards of procedural due process. Under its aegis, an error that would not have risen to constitutional dimension by itself might suddenly, when aggregated with other non-constitutional errors, become worthy of habeas relief. The legal certainty afforded by rules drawn fro m the specific Bill of Rights provisions related to criminal law could then yield to the subjectivity of fundamental fairness determinations. Worse yet, a free-floating fundamental fairness rule subverts the uniformity of results that is the basic goal of an organized legal system: one defendant may persuade the court that his five non-constitutional errors denied fundamental fairness, while another, less imaginative, may be denied relief simply because he cited only four of the same errors out of the record.

Equally important, granting habeas relief from state convictions for aggregated non-constitutional errors may too easily conflict with established limits on the scope of federal habeas relief. That result would thwart recent decisions that emphasize due regard for the finality of state court judgments. *See, e.g., Coleman v. Thompson,* ⸺ U.S. ⸺, ⸺, 111 S.Ct. 2546, 2563, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant,* ⸺ U.S. ⸺, ⸺ – ⸺, 111 S.Ct. 1454, 1468–69, 113 L.Ed.2d 517 (1991); *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989). To avert such a conflict, while recognizing that formulating a complete definition of

unconstitutional cumulative error is not feasible, we can at least eliminate certain types of complaints that should generally not be considered in cumulative error review. By this process of elimination, minimum standards at least normally applicable to a cumulative error claim of constitutional dimension may be expressed.

First, any cumulative error theory must refer only to *errors* committed in the state trial court. A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors. *See United States v. Rivera,* 900 F.2d 1462, 1470–71 (10th Cir.1990) (*en banc* ); *Mullen v. Blackburn,* 808 F.2d 1143, 1147 (5th Cir.1987) ("Twenty times zero equals zero."). If an action of the trial court cured a putative error, the petitioner is complaining only of an adverse event rather than actual error. *Compare Donnelly,* 416 U.S. at 645, 94 S.Ct. at 1872.

Second, the error complained of must not have been procedurally barred from habeas corpus review. *See, e.g., Coleman v. Thompson, supra.* Beyond the notion of procedural bar, it is important that a defendant objected to errors to demonstrate that they were believed at the time of trial to have had an adverse effect on the defense. A trial transcript is lifeless, bereft of the nuances of behavior, facial expression and inflection of voice that so powerfully influence the participants and jury. A transcript may be misleading: it may suggest for instance, that the trial judge made a comment arguably demeaning to the defendant, although the judge actually intended to display wry humor or to mutter to himself rather than reprove the defendant. Only a contemporaneous objection, difficult as it may be to criticize comments by the judge or opposing counsel's argument, distinguishes harmless remarks from those truly felt to be prejudicial to the defense.

Third, errors of state law, including evidentiary errors, are not cognizable in habeas corpus as such. *Estelle v. McGuire,* ––– U.S. ––––, ––––, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983). Errors of state law rise to constitutional dimension only if they "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); *see also Walker v. Engle, supra.*

Fourth, the federal court must review the record as a whole to determine whether the errors

more likely than not caused a suspect verdict. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir.1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

This case vividly demonstrates the shortcomings of free-range cumulative error analysis. The errors regarded as heavily prejudicial by the panel majority either did not involve "errors" so much as adverse events, or were not preserved by objection in the trial court, or concerned state law rather than constitutional questions. Significantly, they were not outcome-determinative. Derden's claims transgress nearly all of the limits that must circumscribe cumulative error review for federal habeas corpus purposes.

Derden alleged three sources of "error" that allegedly poisoned the atmosphere of his trial: comments by the trial court; two instances of prosecutorial misconduct; and a *Brady* violation. The record does not, however, confirm the baleful influence that Derden attributes to these events.

A. *The Judge*

The conduct of a trial judge can violate due process only if the judge so favors the prosecution that he appears t o predispose the jury toward a finding of guilt or to take over the prosecutorial role. *See United States v. Middlebrooks,* 618 F.2d 273, 277 (5th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980); *United States v. Sheldon,* 544 F.2d 213, 219 (5th Cir.1976). Some of the comments by Derden's trial judge were ambiguous or imprudent, but taken in the context of the entire, hotly contested trial, they did not deny due process. Derden did not make a single objection to the trial court's allegedly inflammatory remarks.[8]

Taking the allegedly offensive judicial remarks one by one, Derden complains that the court admonished him not to look at the jury.[9] At this point in his testimony, Derden had begun a speech,

---

[8]Neither the state courts nor Mississippi's brief has relied on procedural bar, but as was earlier pointed out, while the making of a contemporaneous objection suggests the perceived harmfulness of a particular judicial remark, its absence suggests the contrary.

[9]Q: That's a receipt that you had, is that right, Mr. Derden? You testified from a gas ticket that you had, a receipt that you had put nine—so many gallons of gas in your—in your van on—on the ninth of February, is that right?

A: I certainly did, yes, sir.

Q: Now, of course, there's nothing on that thing to tell us when that was made

wholly unresponsive to the prosecutor's question, directly trying to appeal to the jury. Repeatedly, Derden's responses to questioning by the prosecutor and his own attorney had been unresponsive and narrative. The court repeatedly cautioned Derden several times about this conduct. The judge had instructed Derden twice on the preceding page of the transcript, and at other times, to answer questions directly. The court's exasperation is understandable, whether or not his particular instruction was appropriate.

Derden also objects to the court's having sustained four objections to his attorney's opening argument. The prosecutor's opening argument had been extremely brief. Defense counsel could have summarized his contentions with similar brevity by saying that the co-conspirators were all lying, because their stories were completely inconsistent and each had received a deal from the prosecutor in order to "get" Derden. Instead, defense counsel embarked on a rambling preview of the likely evidence. Surely the judge was entitled to set some limits on opening remarks, both to maintain control of his courtroom and because attorneys' statements are not evidence.

In this court, Derden recounts instances in which the trial judge admonished defense counsel in various ways during trial. Derden's trial counsel neither objected to any of the sporadic comments in the trial court nor pointed them out specifically on appeal to the Mississippi Supreme Court. Under such circumstances, it is impossible to calculate the effect of such remarks on the jury.

Derden complains that the trial court responded to the prosecutor's objection to the defendant's closing argument by saying he did not hear defense counsel's argument.[10] Such candor might have been regrettable, but in the end, the court did not sustain the objection and defense

---

out, is there, Mr. Derden?

    A: Well I've been in jail, ladies and gentlemen, since January twenty, eighty—eighty-five—

*THE COURT:*

*Just a minute. Face the lawyer and answer the lawyer's questions, and you do not address the jury, you understand? I'm not going to caution you about this again.*

[10]The court said: "I just wasn't paying any attention; I don't know what was said, Counsel, but you may proceed."

counsel proceeded. The record provides no context for this remark, and appellate counsel, not having served at trial, offer no elucidation.

Contrary to Derden's overriding charges of trial court bias, the record reveals other instances in which the court aided defense counsel. The court insisted that the prosecutor obtain, for purposes of impeachment, records of Sherrod's prior criminal activities that were not readily available to defense counsel. The court also allowed hearsay questioning by defense counsel during a preliminary hearing and at trial. On balance, the court ruled evenhandedly on both sides' objections.

Federal courts are poorly situated to evaluate the "tone" of state court proceedings from the abstract vantage point of a trial transcript. Federal judicial officers are increasingly unlikely in this day and age to be personally acquainted with their state counterparts or with the lawyers who appeared at trial. We cannot impute vitriol or impropriety to comments that a record renders ambiguous. Reflecting this caution, we are persuaded that none of the judge's comments is even an obvious abuse of discretion, much less that they acted cumulatively or in tandem with other events to poison the jury against Derden.

B. *The Prosecutor*

The standard for granting habeas relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). As we have noted, "federal courts may not, in a habeas corpus proceeding, impose the same standards upon state prosecutors that they apply to federal prosecutors in cases on direct appeal." *Kirkpatrick,* 777 F.2d at 281. Derden pointed out two violations of Mississippi law by the prosecutor, both of which were corrected by the trial court. The prosecutor admittedly overstepped his bounds under Mississippi law when in *voir dire* he tried to commit the jury to evaluate the co-conspirators' testimony like any other. This state law error, the State Supreme Court held, would have been reversible if the trial court had not properly instructed the jury at the end of trial to beware of such testimony. *Derden,* 522 So.2d at 754–55. The prosecutor also erred under Mississippi law in eliciting from Sherrod that Derden was his accomplice in other robberies. But this misstep was immediately corrected by the trial court's

instruction to the jury to disregard that evidence. Derden did not move for a mistrial. If Derden had been tried in federal court, a violation of Federal Rule of Evidence 404(b) might have occurred—neither a constitutional error nor reversible in itself, particularly because of the trial court's prompt curative instruction. *See e.g., Woodruff v. Lane,* 818 F.2d 1369, 1373 (7th Cir.1987); *Sargent v. Armontrout,* 841 F.2d 220, 224 (8th Cir.1988). Under *Estelle, supra,* these violations of state law were not of a constitutional dimension, and it defies logic to suggest that the prosecutor who committed them behaved in an unconstitutionally prejudicial way.

C. *The Brady Violation*

The prosecutor's alleged *Brady*[11] violation likewise furnishes no assistance to Derden. He contended that the prosecution withheld evidence of the police radio log that showed that no radio call was made on the Wade's Grocery Store burglary until 2:00 a.m. Derden argues that the radio log conflicted with and would have impeached the co-conspirators' testimony that the burglary occurred between 12:00 and 1:00 a.m. It is not clear, however, that such evidence would have been exculpatory. The police might have acted on their report slowly. Other witnesses timed the burglary between 12:00 and 1:00 a.m. If the co-conspirators' and witnesses' sense of the time was incorrect, that does not cast doubt that a burglary occurred, nor does it demonstrate in any greater degree that the other burglars fabricated Derden's involvement. We disagree that the evidence on police call sheets was material or exculpatory, as a *Brady* claim requires.

D. *The "Cumulative" Impact*

Because there were no trial court errors that affected Derden's specific constitutional rights, and few that were properly preserved by objection, the "error" predicate for a cumulative error habeas corpus theory dissolves. Even if the events of which Derden complains were "errors," it cannot reasonably be said that they cumulatively so infected the trial with unfairness as to render his conviction a denial of due process. Co-conspirator testimony should indeed be suspect and viewed with caution, as the trial court instructed the jury, but here, the jury was fully aware of the favorable treatment the other burglars had received from the prosecutors. Further, Turner and Posey testified

_____

[11]*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

that they gave the prosecutor statements implicating Derden in the burglary *before* any plea bargain was reached. The inconsistencies in the co-conspirators' testimony related only to the timing of events the night of the burglary. Derden's alibi was demonstrably weak and unsupported by any disinterested testimony. He was stopped while driving his van in the wee hours of February 10 and ticketed for having broken tail lights. In the swearing match between Derden and his defense witnesses and the co-conspirators, the jury could readily have believed the co-conspirators. Had *none* of the events of which Derden now complains occurred, it is almost certain that he would have been convicted of burglary.

Derden's habeas case, rather than crying out for the federal courts to curb a state judicial system run amok, evokes that endless multiplication of claims disparaged by this court in *Mullen,* 808 F.2d at 1147. Derden's assembly of cumulative errors has varied kaleidoscopically as he proceeded through state and federal review of his conviction. In the state court, he complained of a fundamentally unfair pretrial hearing, of the erroneous admission of hearsay testimony, and the violation of Pam Smith's fifth amendment rights as among the errors contributing to a due process violation. In the federal courts, however, he abandoned those points but beefed up the number of instances of alleged judicial bias. Several of his complaints of judicial misconduct have never been proffered to the Mississippi courts, by objection or otherwise. His mutating claims represent the logical conclusion of a process of seeking "fundamental fairness" unconstrained by standards or limits.

In concluding that Derden's right to due process was not violated by the Mississippi state court, we need not disagree that some errors were committed. Whether considered individually or cumulatively, however, the trial errors did not assume constitutional significance, and we are led to the conclusion that if Derden's trial was in some ways procedurally imperfect, it was by no means fundamentally unfair. *Lundy,* 888 F.2d at 481. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Cumulative error in habeas corpus review, a narrow and rare form of a due process violation, in no way applies to the facts before this court.

The judgment of the district court denying habeas corpus relief is AFFIRMED.

WIENER, Circuit Judge, concurring in the result of the majority opinion.

HIGGINBOTHAM, Circuit Judge, with whom KING, Circuit Judge, joins, specially concurring:

I concur in the judgment that this habeas petitioner has failed to show that he was denied his right to procedural due process under the Fourteenth Amendment, the ultimate assurance of a fair trial. I do not agree with the majority's antipathy for the basic *constitutional* doctrine of cumulative error nor its assertion that the doctrine is mutable—one thing on direct appeal, but another on habeas review.

There are few cases in which the constitutional doctrine of cumulative error might upset a conviction. There are few procedural errors that are sufficiently serious in combination to render a trial fundamentally unfair that do not independently step on some constitutionally assured right—for the obvious reason that we have found constitutional assurances for so many of the trial processes of a criminal case. As the Supreme Court put it, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has little operation."[1]

We have no warrant to read this *constitutional* doctrine one way in habeas and another on direct review. The constitutional doctrine, sans any element of supervisory process, is the same in habeas and on direct review. This is, of course, a process-protecting doctrine, and its use after the full processes of state review will likely have less play than at an earlier stage. It is quite a different matter to treat cumulative error as of a piece with the Supreme Court's trimming of habeas—in *McCleskey, Teague,* and *Coleman.*[2] This new-found incompatibility of the constitutional doctrine of cumulative error and habeas is also at odds with the history of federal habeas review of state convictions. The most ardent proponents of habeas reform urge that decisions of constitutional issues by state courts ought not be reviewed by a federal habeas court at all *if* the state has accorded a convict a full and fair review; that is, *if* procedural minimums are met. *See e.g.,* Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv.L.Rev. 441 (1963). This

---

[1] *Dowling v. U.S.,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990).

[2] *Coleman v. Thompson,* ⸺ U.S. ⸺, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant,* ⸺ U.S. ⸺, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

argument for reform accepts the habeas court's inquiry into procedural fairness and,*a fortiori,* its inquiry into fundamental fairness. The majority opinion attacks even this restricted role for lower federal courts and I cannot join it.

The majority's effort to fetter the constitutional doctrine of cumulative error contains the implicit suggestion that the doctrine is an open-ended threat to comity, finality, and federalism, values we all share. I do not agree. The doctrine is, in my view, quite narrow—as evidenced by the majority's inability to locate more than two instances from our thousands of habeas cases in which a state petitioner has succeeded with the argument. With all respect to my colleagues in the majority, they take a club to a pup and by doing so tell the world that it is a wolf—a perverse result that is doubtlessly unintended.

REYNALDO G. GARZA, Circuit Judge, with whom POLITZ, Chief Judge, joins, dissenting:

I respectfully dissent from the majority opinion. The majority opinion, as written, was not necessary because this case does not involve legal issues and no matter how much the majority has written in trying to limit the law of habeas corpus on cumulative error, our Constitution still guarantees every criminal defendant, no matter his background or criminal record, a fair trial. If Derden's trial violated his due process then his constitutional right to a fair trial was violated and he is entitled to a new trial.

As I said before, no legal principles were involved here, only questions of fact. This is a case which is case specific and fact intensive in its nature. I do not think that there is any question that the cumulative errors that Derden complains of and that I set out in the panel opinion of *Derden v. McNeel,* 938 F.2d, 605, and the other errors that came to light after the en banc briefs were requested and that are mentioned in other parts of this record, occurred. The United States Magistrate that heard the evidence in this case found the alleged errors to have taken place and recommended that the writ be granted. The United States District Judge who passed on the recommendation of the Magistrate Judge also found that the errors had occurred but was under the mistaken belief that under "Fifth Circuit law" he could not grant the writ. So, we are not alone in outlining the cumulative

errors that Derden complains of but also that the effect of those errors deprived him of a fair trial. Aside from what I have said in the majority opinion of the panel, we must keep in mind that the alleged burglary in this case is alleged to have occurred on February 10, 1983, that the indictment was not brought until approximately two years and nine months later in October of 1985, that Derden was arrested January 3, 1986, and arraigned on January 28, 1986. We point this out because a person forgets a lot of things that happened over a span of nearly three years.

The evidence against Derden came from three admitted accomplices who got very good and sweet deals from the prosecution to get them to testify against Derden. Everyone else that testified upheld Derden's alibi defense or impeached the testimony of the accomplices. Derden's defense was that he was not present at the burglary. That while the burglars were using his van, he had loaned his van to Sherrod, who worked for him, and he had taken Sherrod's car. To prove this Derden was denied to do so at every turn.

For starters, the incident in footnote 9 of the majority opinion when Derden was asked the question about a receipt and he started to answer—

"Well I've been in jail, ladies and gentlemen, since January twenty, eighty—eight-five"—
and the court immediately, without any objection from anybody said,

"Just a minute. Face the lawyer and answer the lawyer's questions, and you do not address the jury, you understand? I'm not going to caution you about this again."

To me the judge not letting Derden face the jury was grievous error. After all, they were the ones that were going to decide his guilt or innocence. All of us, I know, have heard jurors say, "I did not believe that defendant because he did not look us in the eye."

I have been on the federal bench for thirty-one years. Eighteen-plus of those on the district bench trying hundreds and hundreds of criminal cases and since coming on board the Fifth Circuit I have heard appeals on many, many criminal cases. I think I have a feel in deciding when a person has gotten a fair trial. I have no apologies to make to anyone for deciding as the magistrate did and as the district judge did, if he had not been mistaken about our "Fifth Circuit law", that Derden did not

get a fair trial.  As far as I know only four of us have read the record.[1]  This case has turned into a beauty contest between me and Judge Jones and it is a contest I do not think I can win if the judges vote on what a judge says and not because they have read the record.  The writer is not alone in deciding that the cumulative errors complained of deprived Derden of a fair trial, there are others in the judicial process that think likewise.  The writ should be granted and Derden given a new trial as was held by the original panel.

---

[1]I begged my fellow judges on the Fifth Circuit to read the record, or at least the opinions of the magistrate and the district judge in this case because a decision of fairness is left up to the individual judge.