IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 3, 2007

## CARL RONALD DYKES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marion County**
**No. 5184     Thomas W. Graham, Judge**

---

**No. M2006-02771-CCA-R3-PC - Filed January 10, 2008**

---

The petitioner, Carl Ronald Dykes, appeals from the denial by the Marion County Circuit Court of his petition for post-conviction relief, alleging that his trial counsel rendered ineffective assistance and that he should be granted a delayed direct appeal of his convictions. After reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Russell Anne Swafford, Dunlap, Tennessee, for the appellant, Carl Ronald Dykes.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In 1999, the petitioner pled guilty to two counts of vehicular homicide and was sentenced to eleven years on each count, to be served consecutively. Counsel for the State summarized the State's proof at the guilty plea hearing:

> [I]f this matter came to trial the State would show that on the 4th day of October, 1997, Richard and Amanda Crook had been visiting the Chattanooga area. At approximately 8:30 a.m. Central Daylight Time, they were traveling north bound on US. Highway 41, but just as they crossed – they were driving a motorcycle. Mr. Crook was the operator of the motorcycle. Mrs. Crook was a passenger on the

motorcycle. Just as they entered into Marion County on Highway 41, they were coming up a hill and as they topped the hill they encountered a pickup truck being driven by the [petitioner]. The proof would show that by gouge marks and other physical evidence that the impact took place in the north bound lane of Highway 41 several feet from the yellow line. The impact of the pickup truck basically killed Mr. Crook and Mrs. Crook instantly. [The petitioner's] truck proceeded for just a short period of time and ran into a fence.

The State offered further proof that the victims' blood tested negative for the presence of alcohol, and the petitioner's blood tested positive for the presence of amphetamine and methamphetamine. The State was prepared to introduce testimony that the level of methamphetamine found in the petitioner's blood was toxic and would have impaired his ability to operate a motor vehicle.

The petitioner did not file a timely direct appeal from his convictions, and in 2000, he filed a *pro se* petition for post-conviction relief. Counsel was appointed, and an amended petition was filed alleging that the petitioner was deprived of his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process of law. The petitioner requested, alternatively, a new trial, reduction of sentence, reconsideration, or a delayed appeal.

The post-conviction court conducted a bifurcated hearing, considering first the request for a delayed appeal. The petitioner testified that, after his sentence was imposed, he asked trial counsel if he could seek a sentence reduction and counsel replied in the negative. He said that he had not contacted trial counsel since the day of sentencing and that counsel had neither filed an appeal on his behalf nor advised him that he had the right to appeal. During cross-examination, the petitioner said he was not aware that he could appeal a sentence but admitted that he never contacted trial counsel after sentencing to inquire if this was possible. On redirect examination, he reiterated that he never discussed with trial counsel the possibility of appealing his sentence.

Trial counsel testified that he had been licensed to practice law in Tennessee for twenty-five years and had handled "quite a few" criminal cases during his career. He said that he did not discuss the possibility of taking an appeal with the petitioner at sentencing because he was unaware of any legal or factual basis for an appeal. However, he told the petitioner to contact him once the petitioner got settled in prison so they could discuss the matter. Counsel testified that during discussions which took place several months prior to the entry of the guilty plea, he explained to the petitioner that he could appeal his sentence. On cross-examination, trial counsel acknowledged that he never sent the petitioner any written notification of the procedure for appealing his sentence. He reiterated that, prior to sentencing, he discussed with the petitioner his right to appeal.

After considering this testimony, the post-conviction court denied the petitioner's request for a delayed appeal, finding, based on "an affirmative position from the attorney, and an equivocal position from the [petitioner]," that the petitioner did not show that trial counsel denied his right to a direct appeal and thus did not carry his burden of demonstrating that a delayed appeal was warranted.

Regarding the petitioner's claims of ineffective assistance, trial counsel returned to the witness stand and testified that he had at least three or four discussions with the petitioner about challenging the State's assertion that the petitioner was eligible for Range II punishment. Counsel told the petitioner he would challenge Range II punishment if it was an issue at sentencing after a conviction at trial. He testified that he did not move before trial to strike the State's intention to seek Range II punishment because an adverse ruling would have reduced his ability to negotiate a favorable plea bargain.

Trial counsel testified that he kept the petitioner informed about the status of the case by meeting with him frequently. He said that he discussed extensively with the petitioner the consequences of a guilty plea, including the various sentencing determinations the trial court would make. Counsel said that he was prepared to go to trial, and the decision to accept the guilty plea was the petitioner's.

Counsel testified that he "may have" instructed the petitioner that he had a right to independently analyze the blood sample taken from him on the morning of the accident. He did not request independent analysis because, based on his history of dealing with lab reports, he believed the State's report was accurate. Counsel, aware that the petitioner had been taking two prescription medications at the time of the incident, consulted with two physicians who agreed that these medications would not have triggered a positive reading for methamphetamine. He remembered considering filing a motion to suppress the State's lab work but could not recall why he did not do so. During cross-examination, counsel testified that independent analysis of the petitioner's blood sample could not be performed because the State's lab report indicated there was an insufficient sample remaining for further examination.

Counsel said that he consulted an accident reconstructionist who related that he could not testify favorably for the defense. Counsel reviewed pictures of the accident scene but did not review the petitioner's truck. He did not consult a mechanical expert to examine the truck because he did not believe that was warranted, considering the totality of the circumstances.

Counsel testified that, during his representation of the petitioner, he was taking medications for congestive heart failure and deep vein thrombosis. There were times during the representation that his health prevented him from appearing in court. He denied telling the petitioner that he did not think he could continue in his representation. He testified that his medications did not make it difficult for him to concentrate or remember, or limit his ability to drive or operate machinery.

Counsel recalled receiving notice of two witnesses for the State four days before trial. He did not object to the use of these witnesses because there was an explanation for why they were not previously disclosed and he was able to contact both witnesses and discuss their testimony at length prior to trial.

Counsel testified that after the petitioner entered his guilty pleas, he discussed with him the presentence report, preparation of a witness list on the petitioner's behalf, and appropriate demeanor

and conduct during the sentencing hearing. He informed the petitioner that he had a right to prepare and submit a list of mitigating factors, but counsel did not prepare such a list because there were no additional facts besides those which would be brought out by witnesses at the sentencing hearing. He testified that he did not object to the State's notice of enhancement factors or sentencing memorandum and did not submit a sentencing memorandum on the petitioner's behalf.

The petitioner said that he testified truthfully, "[t]o the best of [his] knowledge at the time," at the guilty plea hearing. He acknowledged that he told the trial court that he was guilty of the charged offenses and satisfied with trial counsel's representation. He testified that he first learned that he could be sentenced as a Range II offender when he read the indictment. He said that trial counsel explained that he was facing up to forty years if convicted as a Range II offender, but did not explain that he could challenge the Range II classification.

The petitioner testified that trial counsel never discussed filing a motion to suppress any of the State's evidence and never explained the sentencing hearing procedure. He acknowledged that counsel asked him to prepare a list of character witnesses for sentencing, but said that counsel never explained the presentence report or told him that he could file a list of mitigating factors and a sentencing memorandum.

The petitioner said he met with trial counsel two days after the accident and discussed having an independent blood sample examined. After he informed counsel that he had taken prescription medication for his injuries stemming from the accident, counsel decided against ordering the blood testing.

The petitioner testified that trial counsel informed him that he had spoken with an accident reconstructionist but did not think his testimony would be helpful. In spite of this, the petitioner was under the impression that counsel would hire the reconstructionist to examine the scene. He said that he asked counsel to have a certified mechanic inspect his truck for defects but that this never took place.

The petitioner remembered that trial counsel told him that he had interviewed the State's last-minute witnesses. He said that trial counsel never discussed with him whether he would testify if the case went to trial or what his testimony might entail. It appeared to the petitioner that "we didn't seem to have a defense strategy. Everything we had talked about or worked on never did follow through on." He could not recall how many times he met with counsel during the month prior to trial, opining that "[i]t could possibly [have] been twice. Not a lot." He said most of his meetings with counsel lasted less than fifteen minutes.

At the close of this testimony, the post-conviction court denied the petition, stating:

I don't really think that there's anything here that I could find that would be substantial enough to overturn the verdict in the case. I've reviewed each and every one of the individual complaints and it's not even clear that the case is made on

-4-

ineffective counsel, even on the first step, but it's clear to me that with regard to the proof that we know was going to be there, it would not have [a]ffected the outcome.

## ANALYSIS

The petitioner argues that the post-conviction court erred in denying his request for a delayed appeal and dismissing his claims of ineffective assistance of counsel. He first argues that trial counsel failed to properly inform him of his right to a direct appeal and that this error "procedurally barred" him from seeking direct review of his sentence. He then raises a plethora of claims of ineffective assistance, alleging that trial counsel failed to properly investigate the case, adequately communicate with the petitioner, adequately prepare the petitioner for trial and sentencing, retain an accident reconstructionist, obtain access to the petitioner's truck prior to trial to have an independent mechanical inspection for vehicle failure, retain a toxicologist or otherwise challenge the blood test evidence, advise the petitioner to obtain an independent blood sample, pursue a motion to suppress the blood test evidence, request a jury viewing of the accident scene, object to last-minute witnesses presented by the State, challenge the State's notice to seek Range II punishment, expunge the petitioner's dismissed charges from previous cases so they could not be considered at sentencing, object to a late-filed presentence report, object to the State's proposed enhancement factors, file mitigating factors or a sentencing memorandum, object to inadmissible evidence during the sentencing hearing, advise the petitioner of his right to appeal his sentence, and assist the petitioner in appealing his sentence.

As to the petitioner's complaint regarding the direct appeal, the State responds that he was not denied the right to seek an appeal of his sentence and is not entitled to a delayed direct appeal. Responding to the petitioner's argument that counsel was ineffective, the State argues that he did not prove by clear and convincing evidence that this was the case or that any purported ineffectiveness changed the outcome of his case; i.e., that the petitioner would have chosen to go to trial absent counsel's errors.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

# I. Delayed Appeal

Tennessee's Post-Conviction Procedure Act provides that when a trial judge finds that the petitioner was denied the right to an appeal from the original conviction in violation of the United States or Tennessee Constitution, and there is an adequate record of the original trial proceeding available for review, the trial judge can grant a delayed appeal. Tenn. Code Ann. § 40-30-113(a)(1) (2006). A defendant may receive a delayed appeal where there has been a denial of the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003). In determining whether a defendant has been denied effective assistance of counsel, courts apply the two-pronged deficiency and prejudice test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

As we will explain, we conclude that the record supports the trial court's determination that counsel informed the petitioner of his right to a sentencing appeal. At the post-conviction hearing, the following exchange took place between counsel for the State and counsel who represented the petitioner at his guilty plea hearing:

> Q: In your prior discussions, prior to the sentencing hearing, in fact, prior to him [the petitioner] entering the plea of guilty, had you discussed the fact that he had a right to appeal?
>
> A: Yes, sir.

Later in the hearing, the trial court questioned counsel on the same issue:

> THE COURT: Now, . . . when you were discussing appeal in this case, did the discussion of letting the case go on a plea, letting the judge have a sentencing hearing and then appeal the sentencing hearing, was that part of what you said you did?
>
> A: Yes, sir, we discussed that.
>
> THE COURT: So you actually discussed that that far ahead that there might be a sentencing hearing and you could appeal the sentencing hearing?
>
> A: Yes, but that was several months before we entered the plea.

Based upon this exchange, we conclude, as did the post-conviction court, that the petitioner has not met his burden of establishing by clear and convincing evidence that trial counsel did not inform him of his right to a direct appeal. This issue is without merit.

## II.  Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee.  See U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9.  In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law.  See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The United States Supreme Court articulated the standard in Strickland, which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective.  The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results."  466 U.S. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064.  The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065.  The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated:  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").  In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial.  Howell v. State, 185 S.W.3d 319, 329 (Tenn. 2006).

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

Initially, we note that, on appeal, the petitioner has waived most of his ineffective assistance claims by failing to support them with argument or appropriate citations to the record. Tenn. Ct. Crim. App. R. 10(b). By way of argument, the petitioner submits only that,

> In the case at hand, [the petitioner] has met both prongs [of Strickland] and should be granted relief. Trial counsel failed to adequately prepare, interview and call witnesses told to him by his client. Further trial counsel failed to adequately investigate and advise his client prior to the entry of the plea. Trial Counsel filed no motions to suppress evidence or challenge the Range II notice prior to trial.

The petitioner does not explain which witnesses trial counsel failed to prepare and did not offer the favorable testimony of any such witness at the post-conviction hearing – therefore, he has waived this issue as well. Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). Nor does he explain how counsel's investigation or advice was inadequate, or why the evidence against him and the State's notice of intent to seek Range II punishment should have been challenged. In short, the petitioner has not demonstrated that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different.

The petitioner, citing Walker v. Engle, 703 F.2d 959, 963 (6th Cir. 1983), and State v. Taylor, 968 S.W.2d 900, 912 (Tenn. Crim. App. 1997), argues that the cumulative effect of counsel's errors produced a trial setting that was fundamentally unfair and created "a feeling in him of hopelessness, and that he had no choice but to enter a guilty plea." In Walker, the Sixth Circuit Court of Appeals held that the cumulative effect of six evidentiary errors at trial, although individually insufficient to amount to a deprivation of due process, produced a trial setting that was fundamentally unfair. 703 F.2d at 963. In Taylor, this court held that counsel's failure to adequately investigate a claim of improper venue and to support a claim made in the defense's opening statement, taken together, constituted ineffective assistance of counsel. 968 S.W.2d at 912.

As we will explain, both Walker and Taylor are distinct from the present appeal.[1] The errors complained of in Walker each involved the improper admission of evidence at trial, not the

---

[1] We note that Walker, a United States Sixth Circuit Court of Appeals case, does not bind this court.

ineffective assistance of defense counsel. Accordingly, the holding in Walker is based upon the right to due process of law, not effective assistance of counsel, and is inapplicable to this case. Moreover, recent case law calls into question the viability of Walker's holding. See Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005) (holding that the federal Antiterrorism and Effective Death Penalty Act forecloses the cumulation of individual errors to support habeas corpus relief).

Taylor is inapposite as well. In that case, the defendant was charged in Rutherford County with two counts of rape. Although the proof indicated that one of the alleged incidents took place in Wilson County, trial counsel did not move for pretrial dismissal of that count because he felt he could obtain dismissal at the close of the State's proof if the State had not proven venue. Taylor, 968 S.W.2d at 909-10. This court held that such a tactic amounted to ineffective assistance because it exposed the Rutherford County jury to irrelevant, inflammatory evidence of another improper act by the defendant against the victim, which undermined confidence in the guilty verdict on the rape count occurring in Rutherford County. Id. at 911. Defense counsel in Taylor also told the jury during his opening and closing statements that the medical evidence did not connect the defendant to the crime, despite the State's introduction of proof to the contrary. This court held that the cumulative effect of these two errors deprived the defendant of a meaningful defense and called into question the reliability of the verdict. Id. at 912.

By contrast, the petitioner in this case has not demonstrated any grounds on which his counsel was ineffective. A bare laundry list of allegations, without supporting proof, cannot establish ineffective assistance on the basis of cumulative error. The petitioner is not entitled to relief on this basis.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE