IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

## ANTHONY T. BRANDON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 17776     Forest A. Durard, Jr., Judge**

_____

**No. M2017-00080-CCA-R3-PC**

_____

Petitioner, Anthony T. Brandon, appeals the denial of his petition for post-conviction relief from his convictions for possession with intent to sell .5 grams or more of cocaine and simple possession of marijuana. Petitioner argues that he received ineffective assistance of counsel. Upon our review of the record and the briefs of the parties, we determine that Petitioner has waived his claim for failing to present an adequate argument in his appellate brief. Waiver notwithstanding, we also determine that Petitioner failed to prove his claim by clear and convincing evidence. Therefore, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Roger Clay Parker, Shelbyville, Tennessee, for the appellant, Anthony T. Brandon.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

In July of 2013, officers with the Shelbyville Police Department responded to a hotel for a noise complaint. Petitioner opened the door, and the officers told him he needed to leave. As Petitioner was gathering his things in the room, he invited the

officers inside. One officer saw a clear plastic bag containing a white powdery substance on the bathroom floor. Petitioner ultimately admitted owning the bag. Petitioner also produced two Crown Royal bags from his pockets, one containing over $1400 in cash and the other containing two marijuana blunts. Petitioner denied consent to search the room, stating that it was not his room. After Petitioner was arrested and taken outside, a drug-detection dog "alerted" on a Crown Royal bag on the nightstand. The bag contained both powder cocaine and cocaine base, also known as crack cocaine, as well as over $7000 in cash. In total, the officers discovered over 6 grams of powder cocaine and 17 grams of crack cocaine. *See State v. Anthony T. Brandon*, No. M2015-00654-CCA-R3-CD, 2016 WL 1600279, at *1-2 (Tenn. Crim. App. Apr. 19, 2016), *no perm. app. filed.*

During the investigation, officers determined that the room was rented in the name of Shana Bryan. A woman named Amy Merlow was also staying in the room with Petitioner. When she returned to the scene during Petitioner's arrest, Ms. Merlow smelled of alcohol, and a crack pipe was discovered in her vehicle; however, Ms. Merlow was not charged with possession of drug paraphernalia or possession of any of the cocaine inside the hotel room. Jason Bryan, Shana Bryan's husband, testified for Petitioner that he had seen Ms. Merlow at a store with "several thousand dollars" cash and that he had never seen her with that much money before. The parties stipulated that Rick Overcast, a bondsman, would have testified that Ms. Merlow paid Petitioner's $1200 bond in cash. *Id.* at *2-3.

Petitioner was convicted by a Bedford Country jury of possession with intent to sell .5 grams or more of cocaine, possession with intent to deliver .5 grams or more of cocaine, possession with intent to sell .5 grams or more of cocaine base, possession with intent to deliver .5 grams or more of cocaine base, and simple possession of marijuana. *Id.* at *3. The trial court merged the two delivery charges into the respective sale charges and imposed a total effective sentence of twenty-four years. *Id.* On direct appeal, this Court held that the cocaine offenses should have been merged into a single conviction, finding that the legislature did not intend to create separate units of prosecution for powder and crack cocaine. *Id.* at *7. Accordingly, this Court modified Petitioner's total effective sentence to twelve years, eleven months and twenty-nine days. *Id.* at *8. This Court affirmed the judgments in all other respects. Amended judgments were filed by the trial court on July 25, 2016.

On June 1, 2016, Petitioner filed a timely petition for post-conviction relief. Petitioner alleged that he received ineffective assistance of counsel in that trial counsel failed to adequately prepare for trial, failed to file a motion to suppress, failed to interview and present the testimony of certain witnesses, failed to raise a *Batson*[1] claim

---

[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986) (allowing defendants to challenge a prosecutor's peremptory strikes of jurors on the basis of racial discrimination).

with respect to the selected jury, and failed to object to the prosecutor's closing argument.[2] On October 26, 2016, appointed counsel filed a motion to amend the petition, which the post-conviction court treated as an amended petition. An evidentiary hearing was held on November 2, 2016.

At the hearing, trial counsel testified that he had worked for the Public Defender's Office for the 17th Judicial District for approximately fifteen years. Trial counsel was appointed to represent Petitioner in both general sessions court and circuit court. Trial counsel was assisted by other attorneys from the Public Defender's Office. Trial counsel testified that he usually meets with clients at each court date in both general sessions court and circuit court and also meets with them several times in advance of trial. Trial counsel testified that Petitioner was out on bond, and trial counsel had difficulty getting in touch with him to schedule meetings.

Petitioner provided trial counsel a list of potential witnesses he wanted interviewed, including Amy Merlow, Shana and Jason Bryan, and Ricky Overcast. An investigator spoke to the suggested witnesses, but trial counsel could not recall if anyone spoke to the hotel clerk. Trial counsel determined that the best defense would be to assert that the drugs did not belong to Petitioner. However, trial counsel believed that Ms. Merlow's and Ms. Bryan's testimony would hurt Petitioner's case because they placed him as the sole occupant of the hotel room at the time the drugs were found. Trial counsel used testimony regarding Ms. Merlow's possessing drug paraphernalia and large amounts of cash to argue to the jury that the drugs belonged to her. Trial counsel was not aware whether Ms. Merlow was related to Shelbyville Police Lieutenant Charles Merlow, but he did not believe that any relation had been used to get her out of trouble in the past because she had an extensive criminal record.

Trial counsel testified that he considered filing a motion to suppress the drugs "but there were numerous problems with that." Specifically, Petitioner had disclaimed his expectation of privacy when he told the officers that he could not consent to the search because the room was not his. Additionally, some of the drugs were in plain view after Petitioner invited the officers into the room. Trial counsel did not believe that a motion to suppress would have been successful primarily because of the standing issue.

Trial counsel recalled that there was an issue with the audio-recording of the officers' encounter with Petitioner due to interference. The audio was often "staticky," and the portion where Petitioner allegedly admitted ownership of some of the drugs was inaudible and "muffled." Trial counsel reviewed the recordings with Petitioner. During

---

[2] Other claims raised by Petitioner, such as a challenge to the sufficiency of the evidence and the propriety of his sentence, were previously determined on direct appeal. *See* T.C.A. § 40-30-16(h); *Anthony T. Brandon*, 2016 WL 1600279, at *3-6.

the trial, trial counsel "brought out that it is very convenient that at the time when an admission is made, the only time an admission is made that they are saying it happened when the audio was not working correctly." Trial counsel could not recall if the recordings were played for the jury, but both officers testified to Petitioner's admission. Trial counsel could not remember "offhand" if he asked for *Jencks*[3] material with regard to the officers' testimony but stated that he makes such a request "the vast majority of time." Trial counsel did not believe that there were any significant inconsistencies between the officers' trial testimony and their earlier preliminary hearing testimony.

With regard to the jury selection, trial counsel recalled that several African-American jurors were struck because they knew Petitioner. Even though Petitioner ended up with an all-white jury, trial counsel did not believe that there were grounds to raise a *Batson* challenge in this case. Trial counsel testified that he has raised *Batson* challenges in previous cases when he believed that it was warranted. Additionally, trial counsel testified that he could often predict the race-neutral reason the prosecutor would give for a particular strike based on the juror's answers to the voir dire questions. Trial counsel believed the venire represented "a cross section of population you would expect from Shelbyville."

Trial counsel did not recall the prosecutor's mentioning Petitioner's criminal record during closing arguments and did not believe that he went "overboard" talking about it during the sentencing hearing. Even though Petitioner was a Range I offender, he had several misdemeanor convictions. Trial counsel testified that if the prosecutor mentioned nolled or dismissed cases, the trial judge would not have used those against Petitioner. Trial counsel testified that the prosecutor's reference to Petitioner's being a "drug dealer" during closing arguments was not a reference to his criminal record but an argument based on the charge of possession with the intent to sell.

On cross-examination, trial counsel reiterated that he did not believe that calling Shana Bryan or Amy Merlow would have helped Petitioner's case because they were unlikely to claim either the drugs or the money and they would have testified that "they left the room and did not take anything with them," making it "look even more like it would have been his stuff." Trial counsel did call Jason Bryan to testify. Ricky Overcast was too sick to come to court, so the parties agreed to a stipulation as to his testimony, which trial counsel believed was better than live testimony because it could not be cross-examined. Trial counsel believed that by the time of trial, he had a "solid understanding" of the State's case from the preliminary hearing and the audio recording, that he had an adequate amount of time to discuss the case with Petitioner, and that he and Petitioner were prepared for trial. With regard to the jury selection, trial counsel testified that

---

[3] *See Jencks v. United States*, 353 U.S. 657 (1957) (codified at Tenn. R. Crim. P. 26.2).

Shelbyville had a small African-American population such that it was not uncommon for African-Americans on the jury panel to know an African-American defendant.

Petitioner testified as to his version of events, stating that the noise complaint at the hotel stemmed from an argument he had with Shana Bryan and Amy Merlow. The group "had been in that room getting high for a few days," and Petitioner told Ms. Merlow to take Ms. Bryan home. The officers arrived approximately an hour after the women left. When Petitioner asked the hotel clerk for the return of the deposit on the room, he was referring to the $50 he had given Ms. Merlow for the smoking deposit; however, the clerk could not return the money to him because the room was not rented in his name. Petitioner admitted that he asked the officers if they wanted to come into the room and testified that they declined. Petitioner stated that the door was slightly ajar while Petitioner changed clothes and the officers were in the hallway. Then the officers came into the room and asked about the bag on the floor, to which Petitioner responded that it looked like cocaine. Petitioner admitted that he had marijuana and money in his pockets but stated that the other bag containing a large amount of cash belonged to Ms. Merlow. Petitioner testified that he believed when he denied consent to search the room because it was not his that the officers would seek consent from the person who had rented the room. Instead, Petitioner was arrested, removed from the room, and charged with everything they subsequently found therein. Petitioner testified that he was never asked about and never admitted to owning any of the drugs found after he was arrested.

Petitioner testified that he wanted trial counsel to subpoena Troy Sales, who would testify that Ms. Merlow had been staying in several hotel rooms and that he had signed for the rooms for her because Ms. Merlow did not have a driver's license, as well as Mr. Sales's wife, Rhonda Jordan Sales, who had picked up Mr. Sales from the hotel room the previous night. Petitioner testified that Ms. Merlow was also under investigation for robbery and that he wanted the robbery victim subpoenaed to testify. Petitioner also mentioned as potential witnesses Kavaris Kelso and Dalita Lanier, who would have testified to Ms. Merlow's possession of "massive amounts of cash." Petitioner could not recall if he told trial counsel or one of the other public defenders what these witnesses would testify to.

Petitioner testified that he met with trial counsel only ten days before the scheduled trial date when he was called to the office. He and trial counsel never discussed the details of his case, though Petitioner did have a conversation with one of the other attorneys assisting trial counsel. Petitioner stated that "from day one," he and trial counsel were "at odds," and he requested that counsel and the Public Defender's Office be removed from his case. One of the other public defenders told Petitioner that trial counsel would not be representing him, and that attorney's name was on the "judgment papers" and "[a] lot of paperwork [Petitioner] received from the [c]ourt."

On cross-examination, Petitioner agreed that the room was rented for a single night in Shana Bryan's name, not Amy Merlow's or Troy Sales's. Petitioner believed that Ms. Merlow received favorable treatment because she was related to Lieutenant Merlow. Ms. Merlow claimed ownership of the room but was not charged with possession of any of the drugs inside. Additionally, Ms. Merlow was not charged with driving without a license or possession of drug paraphernalia. Petitioner wanted trial counsel to enter video from the hotel showing Ms. Merlow and Ms. Bryan going "in and out of this room all day long." Petitioner testified that Ms. Merlow left Petitioner in the room with such a large amount of drugs and money because she trusted him. Petitioner admitted that he had constructive possession of the drugs in that room.

With regard to the jury selection issue, Petitioner testified that he recalled one African-American juror being excused even though he did not raise his hand indicating that he knew Petitioner. Petitioner admitted that he did in fact know the juror, and the prosecutor stated that his notes indicated that the juror knew Petitioner. Petitioner did not recall the prosecutor's asking the juror any questions individually. Petitioner agreed that the juror was being dishonest if he indicated that he did not know Petitioner.

Trial counsel was recalled by the State. Trial counsel remembered the prosecutor's asking the jury venire if anyone knew Petitioner. Trial counsel testified that his notes indicated that the specific juror mentioned by Petitioner had answered that he did know Petitioner. Trial counsel also testified that one of his associates spoke to the detective investigating Amy Merlow for robbery. Trial counsel believed that it would have been inconsistent for the defense to raise that issue "because at that point we were trying to paint her as a drug dealer and while the robbery may explain the money, it would not explain the drugs."

The post-conviction court entered an order denying relief on December 19, 2016. According to the post-conviction court:

> The Petitioner, on July 4, 2013[,] found himself in a near impossible predicament created mostly by his own doing. By the time the police arrived at the hotel room, he was the lone person standing in a room full of drugs and money. The party girls he had been with for three days, either by design or happenstance, conveniently abandoned him to his fate. Petitioner's party was over.

The post-conviction court found no deficient performance with regard to trial counsel's decision not to file a motion to suppress given Petitioner's disclaimer of his privacy interest. The post-conviction court found that trial counsel interviewed both Shana Bryan and Amy Merlow and made a strategic decision not to call them to testify. Other proposed witnesses did not testify at the post-conviction hearing; therefore, Petitioner did

- 6 -

not establish that he was prejudiced by the failure to call them at trial. The post-conviction court found that Petitioner did not make a prima facie showing of racial discrimination to support a *Batson* challenge. The post-conviction court found that other claims raised by Petitioner were without merit. The post-conviction court concluded that Petitioner failed to establish any deficient performance on the part of trial counsel or any resulting prejudice. The post-conviction court found that trial counsel actually benefitted Petitioner on appeal by arguing that the cocaine convictions should be merged, resulting in a reduction of Petitioner's sentence by twelve years. Petitioner filed a timely notice of appeal.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id*. However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting

that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Petitioner argues that the post-conviction court erred in its "determination that the conduct of [Petitioner's] counsel was within the standard demanded of competent defense counsel." The State responds that Petitioner has "waived review by failing to show how the post-conviction court erred in its finding that trial counsel was constitutionally effective." Waiver notwithstanding, the State argues that Petitioner's claim is meritless.

Following a summation of the factual and procedural history of the case and a recitation of the applicable law, the entirety of Petitioner's argument with regard to ineffective assistance of counsel is as follows:

Petitioner asserts [trial counsel] pursuant to *Strickland v. Washington* performance [sic] fell below an objective standard of reasonableness and a reasonable probability exists but for counsel['s] unprofessional errs [sic], the result of the case would have been different.

Due to counsel's deficient performance, Petitioner was deprived of "reasonable effective assistance" as required by *Strickland v. Washington* and the services rendered were outside the range of competence demanded by attorneys in criminal cases as required by *Baxter v. Rose*.

Petitioner Brandon submits the cumulative impact of counsel's errors denied him his Sixth and Fourteenth Amendment rights to effective assistance of counsel, and also worked to produce a trial setting that was fundamentally unfair. *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983). Counsel . . . was inadequately prepared to go to trial despite his lamentations otherwise.

Petitioner submits that Counsel['s] . . . performance was inadequate in relation to witness preparation and strategy and the resulting prejudice compels post-conviction relief in this case.

The State argues that "[t]hese conclusory assertions of deficient performance fail to explain with any specificity how counsel's representation was inadequate." We agree.

Under Tennessee Rule of Appellate Procedure 27(a)(7), briefs must contain an argument "setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Petitioner cites to none of the post-conviction hearing testimony or any of the post-conviction court's detailed findings to support his allegations. Petitioner does not specify what "errs" trial counsel made—other than a vague assertion that trial counsel was "inadequately prepared to go to trial" and his "performance was inadequate in relation to witness preparation and strategy"—or how they inured to his prejudice. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." Tenn. Ct. Crim. App. R. 10(b). "It is not the role of the courts . . . to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010); *see also Martin Dean Gibbs v. State*, No. M2016-00218-CCA-R3-PC, 2016 WL 5944992, at *3 (Tenn. Crim. App. Oct. 13, 2016) (conclusory statements about counsel's failure to mount a meaningful defense or to request a more detailed bill of particulars

resulted in waiver of appellate review of those claims), *perm app. denied* (Tenn. Feb. 16, 2017).

Despite the waiver, the evidence in the record overwhelmingly supports the findings of the post-conviction court. Petitioner failed to prove any of his claims by clear and convincing evidence. With regard to "witness preparation and strategy," Petitioner failed to present the testimony of any of the proposed witnesses to show how the failure to call them at trial inured to his prejudice. *See Black v. State*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Moreover, the strategic decisions of counsel are "virtually unchallengeable" if made after adequate preparation. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). Trial counsel testified that he felt adequately prepared for trial after conducting the preliminary hearing, reviewing the State's discovery including the audio recording of the incident, discussing the case with Petitioner, and having his investigator interview the proposed witnesses. Petitioner failed to produce any evidence to the contrary. Other issues raised by Petitioner in the post-conviction court, including his claim that trial counsel failed to raise a *Batson* objection during jury selection and failed to file a motion to suppress, have not been addressed even tangentially on appeal and are, thus, abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE